David ABNEY, by next friend Margaret KANTOR, Appellant

v.

DISTRICT OF COLUMBIA, et al.

No. 87-7102.

United States Court of Appeals, District of Columbia Circuit.

Argued May 10, 1988.

Decided June 17, 1988.

Matthew B. Bogin, with whom Michael J. Eig, Washington, D.C., was on the brief, for appellant. Beth Goodman, Washington, D.C., also entered an appearance for appellant.

Susan S. McDonald, Asst. Corp. Counsel, with whom Frederick D. Cooke, Jr., Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for appellees.

Before EDWARDS, SILBERMAN and GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

This case comes to us on appeal from a decision by the District Court dismissing a suit for injunctive relief under the Education of the Handicapped Act ("EHA"), as amended, 20 U.S.C. §§ 1400–1461 (1982 & Supp. IV 1986). Between September 1985 and February 1986, the District of Columbia ("District") failed to provide David Abney, a mentally retarded teenager who is a ward of the District, with educational instruction in accordance with his individualized education program ("IEP").[1] Abney's surrogate parent, Margaret Kantor, sued on his behalf to enjoin what she alleged was an unlawful deprivation of educational benefits without notice to her and the provision of an opportunity to contest the District's decision. The District Court dismissed Abney's suit because it found that the decision to cease sending Abney to his regular place of instruction, resulting in the denial for several months of the education specified in his IEP, was justified on medical grounds.

---

1. The EHA requires that an IEP be drawn up annually for each handicapped child covered by the statute. An IEP consists of a written statement of the child's current educational performance, instructional objectives, the services to be provided, their duration, and criteria and procedures for determining whether the child's educational goals are being attained. 20 U.S.C. § 1401(a)(19). The local educational provider, the child's teachers and his parents or guardian all participate in the IEP's formulation. An IEP is not location-specific; the place at which an IEP is implemented may change without the IEP itself changing.

We reverse in part. Although the District's decision to stop bussing Abney to his regular place of instruction appears to have been medically justified, we find that the District violated the EHA by failing to provide Abney with the instruction due him in accordance with his IEP between September and December 1985, without notifying his surrogate parent of the withdrawal of educational benefits. We agree with the District Court, however, that Abney is not entitled to relief for any alleged deprivation of educational benefits occurring after December 1985. Accordingly, we remand this case to the District Court with instructions to provide Abney with declaratory relief and to consider his request for attorney fees and costs.

## I. BACKGROUND

David Abney is a profoundly mentally retarded teenager whose natural mother gave him up for adoption shortly after he was born. His general level of functioning is that of a one-month-old child. He is entirely dependent on others for feeding, dressing, toileting and ambulation. After four years in foster homes, he was admitted to the Hospital for Sick Children ("HSC") in 1973. Two years later, he was admitted to Forest Haven, the District's facility for the mentally retarded, because he had made no progress at HSC. Beginning in 1979, he was bussed to a daytime instructional program at HSC for education in accordance with his IEP. Margaret Kantor was appointed as Abney's surrogate parent in December 1984 solely in regard to matters affecting his IEP.

In September and October 1985, unbeknownst to Kantor, Abney's educational program was seriously curtailed. Abney was bussed only sporadically to his educational program at HSC. According to uncontradicted testimony at trial, Abney received instruction at HSC on only one day in September and perhaps ten days in October. Transcript ("Tr.") at 293 (Vancavage testimony). On days when Abney was not bussed to HSC, he did not receive substitute instruction at Forest Haven. Abney's primary care physician at Forest Haven forbade his being bussed on various days throughout this period because Abney suffered from ulcers on his toes and because Abney's wheelchair was undergoing modification. Tr. at 15–16, 18 (Godel testimony). There is no question, however, that Abney's foot injuries did not prevent his receiving instruction, but only his transportation to HSC.

On November 4, 1985, Kantor attended a meeting at Forest Haven regarding elements of Abney's instruction that were not included in his IEP. She was then told for the first time that Abney's attendance at HSC over the previous two months had been intermittent at best. Tr. at 377 (Kantor testimony). She was informed that he would resume attendance as soon as the remaining ulcer on his toe healed, which those present apparently assumed would soon occur. Tr. at 381 (Kantor testimony).

Within days of the November 4, 1985, meeting, it appears that Abney was again bussed to HSC. Tr. at 19–20 (Godel testimony). Another lesion, however, appeared on his toe around November 10–12. Tr. at 20 (Godel testimony). On November 14, Abney's primary care physician examined him and concluded that the principal cause of his recurrent ulcers was poor circulation in his ankles and feet. In his judgment, the long daily bus trips between Forest Haven and HSC aggravated his circulatory problems and presented a risk of further ulcers and possibly gangrene. Although it is unclear whether Abney's physician was responsible for the decision to stop transporting him to HSC, Tr. at 53, 68–69 (Godel testimony), there is no dispute that Abney was not bussed to HSC after mid-November. Tr. at 164 (Clay testimony), 290–91 (Vancavage testimony). Kantor was not informed at that time of the decision to stop sending Abney to HSC.

On December 19, 1985, Kantor attended a meeting at HSC to devise Abney's IEP for the following year. Either at that meeting or at some prior date in December, Kantor was apprised that Abney had not attended HSC since mid-November and that his transportation to HSC had been suspended indefinitely. Tr. at 377, 382–83

(Kantor testimony). Nevertheless, she approved the IEP formulated at that meeting, apparently assuming that Abney would eventually return to HSC for instruction in accordance with that IEP.

Abney's absence from HSC, however, was to become permanent. In December 1985 or January 1986, a pediatrician and a surgeon at D.C. General Hospital confirmed the diagnosis of his primary care physician. Surgery was not performed, but Abney's physician ordered that he not be transported to HSC for the foreseeable future. Tr. at 53–54 (Godel testimony). From mid-November 1985 to the start of February 1986, Abney received no educational programming at Forest Haven in lieu of the instruction he was to receive at HSC. While Kantor appears to to have been aware of this fact at least since December 1985, she did not complain that his IEP was not being implemented.

On February 5, 1986, a meeting was held to decide what to do about Abney's educational program. Because his physician ruled out further bussing to HSC, a program of instruction at Forest Haven was devised. Testimony at trial revealed differences of opinion about the extent to which his program was equivalent to that which HSC had provided. In any case, Kantor agreed to the proposed program at Forest Haven, at least until Abney was fit to be bussed to HSC. Tr. at 420 (Kantor testimony). Funding for Abney's instruction at HSC was terminated and substitute funding was obtained for his instruction at Forest Haven. Those present at the February 5 meeting agreed to convene again no later than May 1986 to assess Abney's prospects of returning to HSC.

On February 28, 1986, Kantor filed suit on Abney's behalf in the District Court. The complaint alleged that Abney had been deprived of an appropriate educational program as required by the EHA without his surrogate parent having been notified and given an opportunity to contest the change, and that he was entitled to instruction at HSC while litigation was in progress. Appendix ("App.") at 13. Abney sought an injunction ordering the District to reinstate and maintain his educational instruction at HSC, as well as a declaration that certain procedural requirements of the EHA had been violated. *Id.* at 14.[2]

In March 1986, Kantor requested a copy of the IEP to which Abney's instruction was being tailored at Forest Haven. She was sent a copy of the IEP she had agreed to at HSC in December 1985, because Forest Haven sought to implement the IEP devised for Abney at HSC. Tr. at 441 (Kantor testimony). Although Kantor had doubts about the possibility of implementing that IEP at Forest Haven, Tr. at 434, 441 (Kantor testimony), she did not formally protest or request a hearing.

On May 20, 1986, Kantor attended a meeting at which she agreed to a more lengthy daily course of instruction at Forest Haven to begin at the start of June, provided that Abney was unable to travel to HSC. Tr. at 680–81, 685 (Evans testimony).

Following a trial in May–June 1986, the District Court dismissed Abney's complaint. *Abney v. District of Columbia*, Civ. No. 86–0558 (D.D.C. Apr. 28, 1987), *reprinted in* App. at 15–24 [available on WESTLAW, 1987 WL 10503]. The court ruled that the decision to stop transporting Abney to HSC was medical in nature, and that it did not constitute an illicit denial of educational benefits. Although the District Court stated that Kantor should have been informed of the decision to stop send-

2. On appeal, Abney also seeks relief under section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. At the time this case was litigated in the District Court, the applicability of section 504 to actions of this kind had been severely limited by the Supreme Court's decision in *Smith v. Robinson*, 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984). Congress effectively nullified the Court's holding in *Smith* when it passed the Handicapped Children's Protection Act, Pub.L. No. 99–372, 100 Stat. 796 (1986), adding 20 U.S.C. § 1415(f). Nonetheless, there is no good reason for us to consider this belated request for relief under section 504. Even assuming, arguendo, that appellant could pursue a claim under section 504, we can discern no *additional* relief to which he would be entitled. In other words, in this case, appellant has received his full measure of relief pursuant to his claims under the EHA.

ing Abney to HSC, it found that there was no *statutory* requirement that the District do so because Abney's educational placement had not been altered for purposes of the EHA. Slip op. at 8, App. at 22.

On April 29, 1987, the day after the District Court issued its decision, Kantor signed a consent form approving an IEP for Abney for 1986–1987. She nevertheless appealed the District Court's decision.

## II. ANALYSIS

The litigation of this case, both before the District Court and on appeal, was poorly focused, producing considerable confusion over what is at stake. In view of the concessions made by Abney's counsel at oral argument, the following facts are now uncontested: (i) Abney's medical condition in late 1985 and throughout the first half of 1986 prevented his traveling long distances to receive educational instruction; (ii) the content of his IEP always has been acceptable to his surrogate parent, although she expressed some doubt about the possibility of implementing it at Forest Haven; and (iii) Kantor has been satisfied with the instruction Abney has been given at Forest Haven since June 1986. What is at issue is whether the District violated the EHA by failing to provide Abney with an appropriate education between September 1985 and May 1986, and by failing to notify Kantor that he was not receiving instruction in accordance with his IEP.

### A. *Mootness*

■ Before turning to the substantive dispute in this case, we confront the District's claim that Kantor's consent to Abney's current educational program, evidenced by her written approval of his IEP for 1986–1987 on April 29, 1987, moots this action. The Supreme Court's recent decision in *Honig v. Doe,* —— U.S. ——, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988), persuades us that the District's claim is mistaken. In that case, the Court stated that jurisdiction exists under the EHA "if there is a reasonable likelihood that [the claimant] will again suffer the deprivation of EHA-mandated rights that gave rise to [his] suit."

*Id.,* 108 S.Ct. at 601. The Court emphasized that the question "was whether the controversy was *capable* of repetition and not ... whether the claimant had demonstrated that a recurrence of the dispute was more probable than not." *Id.* at 602 n. 6 (emphasis in original). In view of this standard, we conclude that the controversy between Kantor and the District is not moot.

Abney is almost eighteen years old, which means that he will qualify for EHA benefits for another three years. *See* 20 U.S.C. § 1412(2)(B). There is no evidence that his medical problems will disappear; indeed, his circulatory deficiencies will probably worsen. Tr. at 25 (Godel testimony). If his ulcers recur, or if he injures himself in some other manner—which is not unlikely, given his tendency to engage in self-abusive behavior—there is a reasonable possibility that he will once again be denied instruction conforming to his IEP during his convalescence, or that the District will again neglect to notify his surrogate parent that his educational instruction has ceased. In the instant case, District officials failed to diagnose Abney's medical problems promptly and they seemed indifferent to his education while awaiting confirmation of the initial diagnosis; these past failures enhance the probability that the violations will recur. We therefore find that there is a reasonable likelihood that the present controversy will recur. Abney's suit is not moot.

### B. *The District's Violations of the EHA*

■ The EHA and accompanying regulations require that each state, along with the District of Columbia, ensure that a "free appropriate public education" is available to all handicapped children. 20 U.S.C. § 1412(1), (2)(B); 34 C.F.R. § 300.300 (1987). As a means to this end, the parent or guardian of a child covered by the EHA must be given written prior notice whenever an educational agency proposes to change the "educational placement of the child or the provision of a free appropriate public education to the child." 20 U.S.C.

§ 1415(b)(1)(C); 34 C.F.R. § 300.504.[3] The required notice must contain, *inter alia*, a complete description of the procedural safeguards available to the parent or guardian, an official explanation for the proposed change, and reasons why other options were rejected. 20 U.S.C. § 1415(b)(1)(D); 34 C.F.R. § 300.505. Although a parent or guardian's consent need not be obtained before the educational benefits a child is receiving are changed once the child has begun receiving benefits, 34 C.F.R. § 300.504(b), notification of proposed changes is nevertheless important, because the parent or guardian retains the right to demand a hearing with respect to changes of which the parent or guardian disapproves. 20 U.S.C. § 1415(b)(1)(E) to (d); 34 C.F.R. § 300.506–.510.

In the instant case, there is no question that the District failed to comply with these statutory provisions during September and October 1985. For most of this period, Abney was neither bussed to HSC nor provided with substitute instruction at Forest Haven. Moreover, Kantor was not informed until well after the fact that Abney's educational program had been seriously curtailed. Thus, the District's actions during this time clearly violated the EHA. The term "free appropriate public education" is defined, at 20 U.S.C. § 1401(a)(18), to include "special education and related services which . . . are provided in conformity with the individualized education program required under section 1414(a)(5) of this title." Hence, in completely failing to implement Abney's IEP during his confinement at Forest Haven, the District necessarily also failed to provide the "free appropriate public education" to which Abney was entitled under the EHA; this failure triggered the statutory notice requirement.

In defense of its conduct, the District notes first that it was responsible for Abney's physical well-being because he was a ward of the District, and argues that it was therefore justified in not bussing him to HSC when his primary care physician believed that doing so would imperil his health. Just as a parent may keep a sick child home from school, the District says, it acted properly in not sending Abney to HSC when his medical condition rendered travel inadvisable. *See* Brief for the District of Columbia at 15.

This argument misses the point. The District had a statutory duty to provide Abney with an "appropriate public education." Yet, Abney was bussed to HSC on only eleven days in September and October 1985. In addition, there is no evidence suggesting that he was incapable of receiving alternative instruction at Forest Haven. Indeed, his primary care physician later recommended precisely that course. Tr. at 73–74 (Godel testimony). Under the circumstances, the District was obliged to arrange substitute programming for Abney at Forest Haven if he could not travel to HSC. At the very least, District officials should have notified his surrogate parent in writing that he was temporarily being deprived of his educational benefits. The fact that Abney could not safely be bussed does not excuse the District's dereliction of its statutory duty.

The District's second justification is utterly specious. Although the District concedes that Abney was not provided with instruction in accordance with his IEP during much of September and October 1985, *see* Brief for the District of Columbia at 5, as well as between November 1985 and February 1986, *see id.* at 19–20, it seeks to excuse this omission by noting that, because Abney was still placed officially at HSC, federal funding could not be obtained to pay for substitute instruction at Forest Haven. *Id.* at 20. Hence, the argument goes, Abney had to do without instruction for several months, until funding for his education could be transferred.

---

**3.** Although this standard is phrased in the disjunctive, the complete failure to implement a child's IEP, which would constitute a change in the child's "educational placement," *Lunceford v. District of Columbia Bd. of Educ.,* 745 F.2d 1577, 1582 (D.C.Cir.1984), would undoubtedly also result in a failure to provide the child with a "free appropriate public education." This result obtains because the statute defines a "free appropriate public education" to include an educational program conforming to a child's IEP. 20 U.S.C. § 1401(a)(18).

This argument is completely devoid of statutory foundation. The EHA requires the District to provide handicapped children such as Abney with an appropriate education. As the District's counsel frankly conceded at oral argument in this case, the EHA contains no exceptions for situations where federal reimbursement is temporarily unavailable. It also seems rather obvious that it was no consolation to Abney that the District paid to preserve his place at HSC while he languished at Forest Haven. The District's plain breach of federal law cost Abney instruction to which he was entitled.

On November 4, 1985, Kantor was told of Abney's spotty attendance at HSC over the previous two months. Although she then had notice of the District's *past* failures to provide Abney with educational instruction in accordance with his IEP, she was not told that this deprivation would continue. So far as she knew, Abney's foot ulcer was almost cured and bussing would soon resume—which it did. Shortly thereafter, when Abney's transportation to HSC was suspended indefinitely, Kantor apparently was not informed, despite the fact that no interim alternative instruction had been arranged for Abney at Forest Haven. From mid-November through the date in December when Kantor was finally notified of the decision to stop bussing Abney to HSC, the District again violated the EHA by disregarding its notice requirements and by denying Abney an appropriate education.

 Sometime in December, however, though no later than the meeting at HSC on December 19, 1985, Kantor was told that Abney had not been bussed to HSC since the middle of November. Although she was not supplied with written notice, she was informed that Abney was not receiving instruction in accordance with his IEP.[4] Significantly, she did not request a hearing then or later, or invoke any other administrative safeguards available to her. As a result, Abney may not obtain relief for any deprivations he suffered after that date.[5]

Even if Kantor had not been provided with notice in December 1985, she would have no basis for claiming that Abney's instruction at Forest Haven beginning in February 1986 contravened the EHA. At the meeting on February 5, 1986, Kantor was apprised that Abney's circulatory problems prevented his transportation to HSC for a least several months. Although she expressed doubts about his doctor's decision to forbid bussing indefinitely, she agreed to a program of instruction at Forest Haven pending a reassessment of Abney's condition no later than May 1986. Kantor therefore had sufficient notice at that time of the District's plans with regard to Abney. Her assent to the proposed program, moreover, vitiates any objection that Abney's instruction at Forest Haven between February and May was inadequate. Her agreement to a modified course of instruction at Forest Haven at a meeting on May 20, 1986, and her evident satisfaction with Forest Haven's implementation of Abney's IEP since that time, further preclude relief for any shortcomings subsequent to May 1986.

In sum, the District violated the EHA from September 1985 to sometime in December of that year by depriving Abney of an appropriate education and by failing to notify Abney's surrogate parent that he was being denied the educational benefits to which he was entitled. Abney is thus entitled to a declaration that the District violated the EHA at that time, and we remand to the District Court for that purpose. Although Abney's deprivation appar-

---

**4.** We need not determine the adequacy of the notice Kantor received, for she has not alleged that it was deficient.

**5.** We reject as frivolous the District's contention that Kantor's suit should be dismissed *in its entirety* because she failed to exhaust her administrative remedies before seeking judicial assistance. *See* Brief for the District of Columbia at 26–27. In the absence of notice by the District that Abney was not going to receive his prescribed education, Kantor was hardly in a position to request a hearing. Indeed, a principal purpose of the suit she initiated was to force the District to fulfill its duty to provide notice in the future before depriving Abney of educational benefits to which he is entitled.

ently continued until February 1986, his surrogate parent's failure to pursue available administrative remedies after she received notice in December 1985 bars any claim for relief for this later period.[6]

### C. *Attorney Fees*

In his complaint, Abney requested that the District Court award "attorney's fees and other costs of this action to the plaintiff based on defendants' bad faith." App. at 14. Because the District Court dismissed his complaint, it awarded Abney no costs or attorney fees. Our partial reversal of the District Court's decision necessitates that we remand the case for consideration of Abney's fee request.

Under the EHA's fee provisions, the District Court, "in its discretion, may award reasonable attorneys' fees as part of the costs to the parents or guardian of a handicapped child or youth who is the prevailing party." 20 U.S.C. § 1415(e)(4)(B). An award of fees "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished. No bonus or multiplier may be used in calculating the fees awarded under this subsection." 20 U.S.C. § 1415(e)(4)(C).

In considering Abney's request, the District Court should be mindful of the fact that, "where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Muth v. Central Bucks School Dist.*, 839 F.2d 113, 130 (3d Cir.1988) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 440, 103 S.Ct. 1933, 1943, 76 L.Ed.2d 40 (1983)); *see* S.Rep. No. 112, 99th Cong., 1st Sess. 13–14 (1985); 132 Cong.Rec. H4842 (daily ed. July 24, 1986) (statement of Rep. Williams). The District Court should therefore scrutinize carefully the amounts requested, in view of the small measure of success the plaintiff has achieved in this litigation.

### III. Conclusion

The District violated the EHA by failing to provide Abney with an appropriate education and by neglecting to notify his surrogate parent between September and December 1985 that he was being deprived of the instruction to which he was entitled. We therefore reverse the District Court's decision in part and remand with instructions to grant Abney declaratory relief in this regard. On remand, the District Court should also consider Abney's request for attorney fees and costs.

*So ordered.*

---

6. Abney also contends that the trial court erred in not finding that the District acted unlawfully in changing his educational placement following the February 5, 1986, meeting. *See* Brief for Appellant at 10, 15. We reject this contention. With respect to the period beginning in February 1986, we find that Abney failed to identify "a fundamental change in, or elimination of a basic element of the education program in order for the change to qualify as a change in educational placement." *Lunceford v. District of Columbia Bd. of Educ.*, 745 F.2d 1577, 1582 (D.C.Cir.1984); *cf. Honig v. Doe*, 108 S.Ct. at 605 n. 8 (noting ambiguity of the phrase "change in educational placement" and holding that suspension from school in excess of ten days constitutes a change in educational placement).

Following the February 1986 meeting between Kantor and District officials, those responsible for Abney's treatment at Forest Haven made every effort to implement the agreed-upon IEP. Although the instruction he received at Forest Haven was not precisely identical to that which he had been given at HSC, Abney made no showing that it differed fundamentally. Moreover, Kantor agreed to that instruction. In light of these findings, Abney's claim that the trial court should have ordered the District, pending the outcome of the litigation, to resume his education at HSC by obtaining a nearby residence for him or to find equivalent instruction for him near Forest Haven must also fail. The EHA's "stay put" provision, 20 U.S.C. § 1415(e)(3), only comes into play if a child's educational placement has changed and if his parents or guardian do not agree to the change. Since we have found that there was no change in Abney's educational placement after he began receiving instruction at Forest Haven in February 1986 and that Kantor agreed to the change in the location of his instruction, we uphold the District Court's decision not to grant the requested injunction.