Anika COX, et al.

v.

**Dr. Andrew JENKINS, et al.,
Appellants.**

**No. 88–7145.**

United States Court of Appeals,
District of Columbia Circuit.

Argued May 9, 1989.
Decided June 16, 1989.

Mary L. Wilson, Asst. Corp. Counsel, District of Columbia, with whom Frederick D. Cooke, Jr., Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, were on the brief, for appellants. Susan S. McDonald, Asst. Corp. Counsel, Washington, D.C., District of Columbia, also entered an appearance, for appellants.

Matthew B. Bogin, with whom Michael J. Eig, Washington, D.C., and Margaret A. Kohn were on the brief, for appellees.

Before MIKVA, EDWARDS and SILBERMAN, Circuit Judges.

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

This suit arises under the Education of the Handicapped Act, 20 U.S.C. §§ 1401–1461 (1982 & Supp.1987) (the "EHA" or "Act"), and it was precipitated by a dispute between the parents of Anika Cox and the District of Columbia Public Schools ("DCPS") over Anika's special education placement during 1985–86. In August 1985, DCPS proposed placing Anika in a public school, the Prospect Learning Center. The appellees, Anika's parents, then filed suit in District Court, without first pursuing their administrative remedies under the EHA, seeking a declaration that Anika should be placed in the private Lab School of Washington, D.C. After a trial

on the merits, the District Court held for the appellees and denied DCPS's motion for summary judgment, ruling that the appellees were not required to exhaust their administrative remedies because to do so would have been futile. Because there is no evidence that exhaustion would have been futile and because the appellees clearly failed to exhaust their administrative remedies, we find that the District Court had no authority to entertain the case. Accordingly, we reverse.

## I. BACKGROUND

Anika Cox has severe language, emotional and behavioral problems that disable her from learning. From 1981 to 1984, Anika's parents, Courtland and Frankie Cox, sent her to private school for kindergarten through second grade. On June 4, 1984, the Coxes filed their first request with DCPS for public assistance to help defray the cost of any special education that Anika might require. During the summer of 1984, DCPS conducted an evaluation of Anika and issued a report concluding that she was in need of special education. By September, however, DCPS had not yet developed an individualized education program ("IEP"), as required by the EHA, 20 U.S.C. §§ 1401(19), 1414(a)(5) (1982), nor had the agency recommended a placement for Anika. Thus, the Coxes proceeded to enroll Anika at the Lab School of Washington, D.C., a private school where Anika had attended summer school.

On October 4, 1984, DCPS issued the first IEP for Anika. See Appendix for the District of Columbia ("D.C.App.") 56. The form that served as the cover sheet of the IEP contained a space for "Percentage of time in regular education instructional program." DCPS wrote "25%" in the space, indicating the agency's recommendation that Anika be "mainstreamed" with non-handicapped students for twenty-five percent of her school day. See id. The body of the IEP described the special education part of Anika's proposed program without reference to mainstreaming.

A week later, DCPS proposed placing Anika at the Janney Learning Center, a

Washington, D.C., public school that has a program in which learning disabled children are mainstreamed for part of the day with regular students. The appellees disagreed with this proposal and requested a "due process" hearing before an administrative hearing officer, as provided by the Act. *See* 20 U.S.C. § 1415 (1982); 34 C.F.R. § 300.506 (1988); D.C.Mun.Regs. tit. 5, §§ 3020–3023 (Aug.1983). At the hearing, which was held on December 6, 1984, the Coxes contended that the Janney school was inappropriate because they felt that Anika should not be mainstreamed at all and because an evaluation of Anika by the Lab School, completed just prior to the hearing, showed a need for occupational therapy (OT). The hearing officer disagreed with the appellees on the first issue, finding that twenty-five percent mainstreaming was appropriate, but agreed with the Coxes that Anika needed OT three times a week. *See* D.C.App. 35, 39. The hearing officer noted that DCPS was not aware of Anika's need for OT at the time the IEP was developed, *see id.* at 39, and ordered DCPS to develop a new IEP that would conform to the officer's findings, *see id.* at 40. The officer deferred any decision on a proper placement for Anika, finding insufficient evidence to determine whether the revised program could be implemented at Janney. *See id.*

On January 16, 1985, DCPS issued a new IEP. The cover sheet form again provided for twenty-five percent mainstreaming. *See id.* at 94. In accordance with the hearing officer's order, the body of the report called for OT two to three times a week. *See id.* at 96–98. Two days later, DCPS again recommended placing Anika at Janney. The Coxes disagreed and requested a second due process hearing.

On March 25, 1985, after the second hearing, the hearing officer determined that neither Janney nor the Lab School was an appropriate placement for Anika. *See id.* at 42, 46–47. The officer found that neither school provided regular psychological counseling, that Anika would be the only girl in her class at the Lab School, and that she would have difficulty changing to Janney late in the school year. The officer found that twenty-five percent mainstreaming was not "inappropriate," as long as it was consistent with Anika's need for a small class size and a highly structured environment. *See id.* at 46. The hearing officer directed DCPS to have Anika evaluated by a clinical psychologist in order to assess the impact of problems identified above. *See id.* at 47.

DCPS agreed to the appellees' wish to have the evaluation done by a private psychologist, Dr. Edwin Carter. In early April 1985, after examining Anika and her records, Dr. Carter determined that counseling was not necessary, that any transfer from the Lab School would be detrimental, that mainstreaming was inappropriate, and that the high ratio of boys to girls at the Lab School was irrelevant.[1] *See id.* at 133.

On the April 22, 1985, deadline set by the hearing officer, DCPS issued another placement proposal. Because of the uncertainty over whether Anika should be mainstreamed, DCPS proposed placing Anika at either Janney, which allows mainstreaming, or the Prospect Learning Center, a public special education program with no mainstreaming. The Coxes disagreed with both proposed placements and requested a third due process hearing.

At the third due process hearing on June 4, 1985, DCPS appeared through counsel, who stated that DCPS was not prepared to go forward. The hearing officer denied DCPS's request to reschedule the hearing later in the week, and counsel for DCPS then walked out. The hearing continued without the participation of DCPS, with

---

**1.** After receiving the report, DCPS filed memoranda with the hearing examiner objecting that the psychologist's report was designed to make the Lab School the only possible placement. *See* D.C.App. 135–37. DCPS asked the officer to order the parents to present Anika for evaluation by a DCPS psychologist. On May 17, 1985, the hearing officer found that the probative value of the report could be raised at the next hearing and that DCPS did not need a special order to conduct its own evaluation. *See id.* at 138. DCPS did not seek to have Anika evaluated before the due process hearing two weeks later. As discussed below, DCPS walked out of that hearing, and the probative value of the report was thus never raised.

evidence presented only by the Coxes and their witnesses.

On June 7, a meeting was held at the Lab School, and officials there prepared a new IEP for Anika. Representatives from DCPS did not participate in this meeting.

On June 14, the hearing officer determined that, because of DCPS's absence from the June 4 hearing, the school district had failed to meet its burden of proof regarding the appropriateness of the proposed placements. *See* D.C.App. 48, 53. The officer also determined that Anika did not require counseling, that she should not be mainstreamed, that she was making significant progress at the Lab School, and that DCPS's January 16, 1985, IEP was inappropriate because it provided for twenty-five percent mainstreaming. *See id.* at 53. The hearing officer ruled that the Lab School was an appropriate placement for Anika for the 1984–85 academic year. *See id.* at 54. However, the ruling added the following caveats:

> As the Hearing Officer indicated to the parents when they expressed their frustration about continuing this process, *DCPS is not foreclosed from proposing a new placement for the 1985–86 academic year.* However, prior to doing so, the Hearing Officer *recommends* DCPS to: (1) review the evidence, both testimonial and documentary, of this hearing and to (2) revise Anika's IEP accordingly to reflect Dr. Carter's conclusions regarding mainstreaming.

*Id.* (emphasis added).

On August 4, 1985, DCPS issued a notice proposing to place Anika at the Prospect School for the 1985–86 year, commencing on September 3, 1985. *See id.* at 146. The DCPS notice made several points: first, it said that DCPS officials had reviewed the evidence that had been presented to the hearing officer, *id.* at 148; second, it indicated that the Janney Learning Center had been considered and rejected as a possible option for Anika's placement, because of the hearing officer's determination that Anika should not be mainstreamed, *id.;* and, third, it proposed that Anika should be placed in the Prospect Learning Center during 1985–86, *id.* The notice pointed out that, under the hearing officer's ruling, DCPS had the option of proposing a "new placement" for 1985–86, and DCPS justified the recommendation of the Prospect Learning Center "based upon the Hearing Officer's Determination of 6/12/85 and 3/25/85 indicating that a self-contained, full time special education program is required." *Id.* DCPS did not issue a new IEP for Anika; consequently, officials at DCPS omitted formally "amending" the IEP that had been issued for Anika on January 16, 1985 in order to delete the reference to twenty-five percent mainstreaming on the cover sheet of the IEP packet. However, there is no doubt that DCPS did not intend to propose any mainstreaming for Anika, because the Prospect Learning Center is open only to handicapped children.

On August 17, 1985, the Coxes requested a fourth due process hearing challenging the Prospect placement proposal. DCPS contacted the Coxes' attorney to schedule a prompt hearing in an effort to resolve Anika's placement prior to the beginning of the school year. The attorney responded that he intended to withdraw the administrative appeal and file this action in federal court, which the appellees then proceeded to do.

The appellees' complaint sought (1) declarations that DCPS's attempt to change Anika's placement was illegal and that the defendants [2] had violated the Coxes' rights to due process, and (2) an injunction preventing DCPS from changing Anika's placement.[3] DCPS counterclaimed for reimbursement of all tuition payments to the Lab School, and filed a motion for summary judgment, claiming that the Coxes had

---

**2.** The suit named as defendants Floretta McKenzie, in her official capacity as Superintendent of D.C. Public Schools, Doris Woodson, the Assistant Superintendent, and the District of Columbia.

**3.** The complaint also sought $50,000 in damages. The District Court did not order any monetary relief, and the appellees have not sought such relief on appeal.

failed to exhaust their administrative remedies. The District Court held the motion in abeyance pending completion of the trial on the merits.

On January 28, 1988, following trial, the District Court initially granted DCPS's motion for summary judgment, finding:

> The plaintiffs have not shown to this Court that they cannot secure the relief they seek from the administrative process. Significant is the plaintiffs' abrupt withdrawal from the hearing process they initiated concerning DCPS's proposed placement for the 1985–86 school year.

*Cox v. McKenzie*, Civ. A. No. 85–2860, 1988 W.L. 9622, slip op. at 5 (D.D.C. Jan. 28, 1988). The trial court noted that the Coxes had "achieved a proper placement for [Anika] through the *administrative process*" and that they had not appealed the hearing officer's ruling that gave DCPS the option to propose a new placement for the 1985–86 school year. *Id.* (emphasis in original). The court concluded that "[t]he plaintiffs' frustration with the administrative process, while understandable, cannot outweigh the importance of the due process hearings within the EHA framework." *Id.* The District Court also dismissed DCPS's counterclaim. DCPS has not appealed that dismissal.

After the District Court filed its initial opinion, the appellees filed a motion to alter or amend the judgment. On May 13, 1988, the District Court reversed itself, vacated the prior opinion, and found in favor of the Coxes. *Cox v. McKenzie*, Civ. A. No. 85–2860, 1988 WL 53426 (D.D.C. May 13, 1988). The trial court held that, although "the plaintiffs could have continued with the administrative process, the Court is convinced that it would have been futile *in this case.*" *Id.*, slip op. at 5 (emphasis in original). The court found that DCPS had failed to comply with the hearing officer's determination because, prior to proposing a new placement, DCPS had not revised the January 16, 1985, IEP to reflect no mainstreaming, had not participated in the Lab

School's June 7, 1985, IEP meeting, and had not adopted the Lab School's IEP as its own. *See id.* at 5–6. The District Court recognized that the June 7 meeting occurred before the hearing officer issued her determination, but the court found "no excuse for the lack of representation by DCPS at that meeting." *Id.* Accordingly, the court found that the Lab School was an appropriate placement for Anika for the 1985–86 school year. *See id.* at 7. The District Court also found that the Lab School was the appropriate placement for the 1986–87 school year, because DCPS had failed to participate in the Lab School's IEP meetings for that year, too. *See id.* The court ruled, however, that the Coxes "must resort to the normal administrative process if they wish to challenge the 1987–88 school year," because DCPS had participated in that year's IEP meeting. *Id.* at 8. Since DCPS had already paid the Lab School tuition for 1985–86, the trial court simply ordered the school system to reimburse the Coxes for the tuition for the 1986–87 school year. DCPS appealed.[4]

## II. ANALYSIS

"The philosophy of the Education for All Handicapped Children Act is that a plaintiff must first exhaust the state administrative remedies provided under the Act, including the administrative appeals provisions, before bringing an action in federal court to challenge the evaluation and placement of a child." *Riley v. Ambach*, 668 F.2d 635, 640 (2d Cir.1981); *see* 20 U.S.C. § 1415(e)(2), (f) (1982 & Supp.1987).

This point was recently emphasized by the Supreme Court in *Honig v. Doe*, 484 U.S. 305, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988), where the Court made it clear that "judicial review is normally not available under § 1415(e)(2) until all administrative proceedings are completed." *Id.* 108 S.Ct. at 606. The Court also noted that parents may by-pass the administrative process only "where exhaustion would be futile or inadequate." *Id. Honig* involved a factual situation different from the one before us

---

**4.** The Coxes have not appealed the District Court's ruling regarding the 1987–88 school year, nor has DCPS appealed the dismissal of its counterclaim seeking reimbursement.

in this case; but the Court's reiteration of the applicable point of law has a direct bearing on this case. The controlling point of law here is that, absent a showing that exhaustion would be futile or inadequate, a party must pursue all administrative avenues of redress under the EHA before seeking judicial review under the Act.

The exhaustion doctrine serves several important purposes: it prevents courts from interrupting the administrative process permanently; it allows the agency to apply its specialized expertise to the problem; it gives the agency an opportunity to correct its own errors; it ensures that there will be a complete factual record for the court to review; and it prevents the parties from undermining the agency by deliberately flouting the administrative process. *See McKart v. United States*, 395 U.S. 185, 193–95, 89 S.Ct. 1657, 1662–63, 23 L.Ed.2d 194 (1969). In the context of EHA, "[t]wo sound policies support the requirement that plaintiffs exhaust administrative remedies before bringing federal actions":

> First, a "strong state interest is reflected in the establishment of a comprehensive scheme of regulation; authority over the subject matter of the dispute has been vested in an expert supervisory body, far more familiar than a federal court with local factors that legitimately affect administration." Comment, *Exhaustion of State Remedies Under the Civil Rights Act*, 68 COLUM.L.REV. 1201, 1206 (1968). If the expert agency cannot resolve the problem finally, the record made in the administrative proceedings will be extremely helpful to the court, since the administrative agency will likely have probed the issue with more expertise than a federal court could bring to bear, and therefore, have illuminated the issue for final decision in the federal court.

> \*   \*   \*   \*   \*   \*

> Second, the "states, as well as the federal government have an interest in providing a means whereby official abuse can be corrected without resort to lengthy and costly trial". Comment, *Exhaustion of State Remedies Under the Civil Rights Act*, 68 Colum.L.Rev. 1201, 1206 (1968). Resort to administrative processes is a desirable alternative to litigation in the federal courts.

*Riley*, 668 F.2d at 640; *see also Ezratty v. Commonwealth of Puerto Rico*, 648 F.2d 770, 774–75 (1st Cir.1981).

There is no dispute that the appellees failed to exhaust their administrative remedies in this case. The administrative hearings culminating in the June 1985 decision resulted only in a determination that "the Lab School is an appropriate placement for Anika for the *1984–85 academic year*." D.C.App. 54 (emphasis added). The order itself stated that "DCPS is not foreclosed from proposing a new placement for the 1985–86 academic year." *Id.* Consequently, the appellees were required to proceed anew through the administrative process if they wished to challenge the proposal for 1985–86. In fact, the appellees were clearly aware of the appropriate process, because they initially filed a request for an administrative due process hearing before withdrawing that request in favor of suit in the District Court.

The appellees claim that they were not required to exhaust their administrative remedies because exhaustion would have been futile. No such showing has been made on the record of this case.

For one thing, it appears from the record that both parties are to blame for the delay in resolving Anika's placement for 1984–85.[5] More importantly, we find no evidence whatsoever that it would have been futile for the Coxes to challenge the August proposal through the administrative process. As the District Court pointed out in its initial opinion, *see* slip op. at 5, the Coxes successfully challenged DCPS's proposals for the 1984–85 year through the administrative process, and there is no reason to think that the Coxes would not have

---

**5.** On the one hand, DCPS delayed until October 1984, after the 1984–85 school year began, to complete Anika's IEP and to propose a placement for that year. On the other hand, the Coxes did not raise the issue of Anika's need for OT until a few days before the December 1984 due process hearing.

been successful in challenging the 1985–86 proposal if their case had merit. Moreover, when DCPS proposed the Prospect placement for the 1985–86 academic year, the school district indicated a willingness to expedite the hearing in order to resolve the issue prior to the start of the school year,[6] showing that DCPS had every intention of complying with the administrative process. It was the Coxes who rejected DCPS's offer in favor of court. As the District Court concluded in its first opinion, "[t]he plaintiffs' frustration with the administrative process, while understandable, cannot outweigh the importance of the due process hearings within the EHA framework." Slip op. at 5.

The District Court appears to have based its finding of futility on DCPS's alleged refusal to comply with the hearing officer's June 1985 ruling.[7] However, we find that DCPS substantially complied with that ruling and that any noncompliance involved matters that could and should have been addressed through the administrative process.

As noted above, the June 1985 ruling determined Anika's placement for the *1984–85 academic year only.* It is undisputed that DCPS paid the tuition at the Lab School for that year. It is also clear that DCPS did not violate the order by proposing a new placement for 1985–86, because that option was explicitly left open by the hearing officer.[8] *See* D.C.App. 54. Therefore, neither of these facts would justify a finding of futility.

The District Court, however, seemed to believe that it would have been futile for the appellees to exhaust their administrative remedies because officials at DCPS failed to comply with the second portion of the hearing officer's decision, which recommended that DCPS (i) review the evidence that had been presented at the June 1985 meeting before the hearing officer and (ii) revise Anika's IEP to delete any reference to "mainstreaming." Even assuming that the District Court's view on these points was correct, however, it would not support a finding of futility. The hearing officer's decision merely *recommended* that DCPS take certain actions; the *order* was limited solely to the 1984–85 year. *See* D.C.App. 54. Thus, even if DCPS had ignored these recommendations altogether, we have doubts whether this would amount to a violation of the hearing officer's determination, and certainly not enough to justify a finding that the appellees were not required to exhaust their administrative remedies as to 1985–86 because it would have been futile to do so.

Assuming, however, that the hearing officer's recommendations were an order, we believe that DCPS has substantially complied. DCPS's notice to the appellees stated that the proposal was "based upon a review of both testimony and documentary evidence presented for Hearing Officer Determination dated 6/12/85 and 3/25/85," D.C.App. 148, in accordance with the first part of the hearing officer's recommendation. The appellees argue that DCPS did

6. Even if the issue could not have been administratively resolved before the start of the school year, the Coxes would have been entitled under the "status quo" provision of the EHA, 20 U.S.C. § 1415(e)(3) (1982), to keep Anika at the Lab School until a ruling was made. *See Honig,* 108 S.Ct. at 604 ("[D]uring the pendency of any proceedings initiated under the Act, unless the state or local educational agency and the parents or guardians of a disabled child otherwise agree, 'the child *shall* remain in the then current educational placement.' § 1415(e)(3) (emphasis added).")

7. The District Court was also concerned about DCPS's failure to attend an IEP meeting at the Lab School in June 1985. Whether or not DCPS had a duty to attend this meeting, however, its

failure to do so does not show that exhaustion would have been futile as to the *1985–86* proposal. It was for the administrative officer to determine in the first instance whether DCPS's prior conduct made its August 1985 proposal defective.

8. In fact, DCPS's decision to propose a new placement was understandable in light of the fact that the June 1985 ruling in favor of the Lab School was made without the benefit of evidence from or cross-examination by DCPS. While DCPS's action in walking out of the June hearing may have forced it to accept unchallenged the officer's decision as to 1984–85, its decision to try again for 1985–86 does not show abuse of the administrative process or a violation of the June order.

not in fact conduct this review, but they offer no evidence to support this claim. DCPS's notice also accepted the hearing officer's second recommendation regarding zero mainstreaming: DCPS ruled Janney out for that reason and proposed to place Anika at a school where mainstreaming was not possible. *See id.* While DCPS did not formally amend the cover sheet of the January 16, 1985, IEP to delete the reference to twenty-five percent mainstreaming, DCPS "was in fact treating the IEP as though changed by the administrative decision." Brief for the District of Columbia at 35. Even if DCPS's failure to make this change in the IEP violated the hearing officer's order, it would be at best a minor violation easily remedied through the administrative process. The appellees' contention that this technical discrepancy entitles them to sidestep the administrative process and unilaterally send their child to a private school has no merit. *See Leonard v. McKenzie*, 869 F.2d 1558, 1562 & n. 3 (D.C.Cir.1989) (refusing to overturn a public school placement on the basis of an "administrative foul-up") .

The opinion of the District Court also points out that DCPS failed to participate in the Lab School's IEP meetings for the 1986–87 school year. Slip op. at 6. But this point is not offered to justify the trial court's finding that it would have been futile for the appellees to exhaust their administrative remedies regarding Anika's placement in 1985–86, the point at which the District Court asserted jurisdiction, and we cannot discern the relevance of this point to the issue at hand. Even if the appellees believed in August of 1985 that DCPS had been irresponsible in the past in failing to participate in meetings regarding Anika's IEP, or that school officials *might* be irresponsible in the future, we do not see how this would excuse the Coxes from exhausting their administrative remedies. It was for the hearing officer to determine

in the first instance whether DCPS's past (or anticipated future) failure to attend IEP meetings or to develop its own IEP made the school district's placement proposal defective, or otherwise entitled the appellees to keep Anika at the Lab School. Furthermore, in this case, the appellees agreed with the Lab School's IEP, and DCPS apparently intended to follow it. *See* D.C. App. 214–15 (testimony of Carrie Johnson, Assistant Principal at the Prospect Learning Center). There does not appear to have been any dispute over the content of Anika's educational plan, and we therefore cannot imagine how DCPS's failure to develop its own IEP would have made it futile for the appellees to pursue their administrative remedies in August of 1985.[9] As the District Court succinctly stated in its initial opinion, "[e]ven if DCPS had committed multiple procedural violations, the hearing officer is still in the better position to make that determination." Slip op. 5.

The appellees' attempt to avoid the exhaustion requirement by styling the case as an action to "enforce" the hearing officer's decision is also unavailing. This argument appears to rely on the premise that exhaustion is not required in enforcement actions because "the statute does not contain any provision for *enforcing* final administrative orders." *Robinson v. Pinderhughes*, 810 F.2d 1270, 1273 (4th Cir.1987) (emphasis added). In the present case, however, the Coxes did have have an administrative mechanism at their disposal: a hearing on the August proposal that allegedly violated the June ruling. Furthermore, the appellees were in fact seeking to challenge DCPS's August proposal regarding Anika's placement in 1985–86, not to enforce the June ruling, which determined the placement for 1984–85 only. Thus, we find that this case is not an enforcement action for which administrative exhaustion is inapplicable.

---

**9.** Although the Lab School developed Anika's IEP for that school's own use, we have previously noted that "[a]n IEP is not location-specific; the place at which an IEP is implemented may change without the IEP itself changing." *Abney v. District of Columbia*, 849 F.2d 1491, 1492 n. 1 (D.C.Cir.1988); *see also Leonard v. McKenzie*,

869 F.2d at 1562–63 (finding that the Lab School's IEP could be implemented at Prospect).

There may be a question whether DCPS's August 1985 placement proposal was defective because it was not timely. Nevertheless, this and other such questions must be pursued in the administrative process in the first instance.

### III. Conclusion

The District Court erred in finding that it would have been futile for the appellees to exhaust their administrative remedies under the EHA prior to bringing suit to challenge DCPS's proposed placement. Because the appellees clearly failed to exhaust those remedies, as required by the EHA, the District Court had no authority to hear their suit.[10] Accordingly, the judgment of the District Court is reversed and vacated and the case is remanded with instructions to dismiss the claim. In reversing, we offer no view on the merits as to the appropriate placement for Anika for the years in dispute.

No costs or fees will be awarded to either party.

*Reversed.*

---

**10.** The appellees also attempt to invoke jurisdiction under 42 U.S.C. § 1983 (1982) and the Fifth Amendment of the Constitution. While the EHA does not preclude suit based on other constitutional or statutory provisions, a party seeking relief under other laws must exhaust the EHA's administrative remedies if the relief sought is also available under the EHA. *See* 20 U.S.C. § 1415(f) (Supp.1987). Since the remedy the Coxes sought—a ruling that the Lab School was the appropriate placement—was available through an administrative hearing on the August proposal, exhaustion was required under section 1983 and the Fifth Amendment as well as under the EHA.