**Joseph A. GREENE, petitioner by his mother and next friend, Linda J. GREENE**

v.

**HARRISVILLE SCHOOL DISTRICT.**

Civ. No. 89–506–S.

United States District Court, D. New Hampshire.

Dec. 20, 1990.

Linda J. Greene, pro se.

Margaret–Ann Moran, Hillsborough, N.H., for defendant.

ORDER

STAHL, District Judge.

In this action, plaintiff Joseph A. Greene ("J.G.") appeals the September 1989 decision of a New Hampshire Department of Education hearing officer which concludes that defendant Harrisville School District offered an appropriate placement to implement plaintiff J.G.'s 1988–89 Individual Education Plan ("IEP"). Plaintiff contends that the hearing officer's decision contravenes both the procedural and substantive requirements of the Education of the Handicapped Act ("EHA"), 20 U.S.C. § 1400 *et seq.* (1988). Jurisdiction is founded upon the EHA, 20 U.S.C. § 1415(e)(2).[1] Currently before the Court are defendant's motion to dismiss this case as moot, defendant's motion for summary judgment, and plaintiff's motion to introduce additional evidence.

*1. Facts*

J.G. was born on April 17, 1977. His family situation has been unstable. His parents separated for about nine months when he was two months old, reunited for approximately two and one-half years, and finally divorced in 1981. Although the parents have not remarried, J.G.'s father took up residence with the family again in 1985, about three and one-half years after the divorce. The family had no contact with the father during those three and one-half years. Plaintiff's Exhibits 11, 15, 20.

Since beginning his academic career, J.G. has experienced behavioral difficulties. During kindergarten and first grade, he manifested unruly behavior, both at home and at school. He often acted impulsively and was defiant when disciplined. During first grade at the ConVal School, J.G. was coded learning disabled ("LD"). Plaintiff's Exhibit 11.

---

1. 20 U.S.C. § 1415(e)(2), in relevant part, states: Any party aggrieved by the findings and decision made ... shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States without regard to the amount of the controversy.

In 1985, J.G., his siblings, and his mother moved to Harrisville and J.G. entered the second grade at the Wells Memorial School. At the end of the school year, a decision was made to retain J.G. in the second grade. Plaintiff's Exhibits 1, 5.

During the summer of 1986, J.G.'s behavior worsened. He twice attempted to commit suicide by inhaling gasoline fumes. As a result, he was hospitalized for approximately 24 hours at the Anna Philbrook Center. Plaintiff's Exhibit 6. Subsequently, a psychological assessment performed at the Center concluded that "J.G.'s intellectual functioning could be impaired by emotional and/or organic factors." It also stated that "J.G.'s social/economic development indicates significant difficulties which are interfering with academic success." Plaintiff's Exhibit 7.

On June 8, 1987, a psychological evaluation of J.G. performed by the Dartmouth Medical School confirmed the Philbrook findings. The evaluation concluded "that J.G. has both a learning disability and a serious emotional and behavioral problem." Plaintiff's Exhibit 11.

As a result, J.G.'s Local Educational Placement Team ("LEPT") discussed adding a coding of emotionally handicapped ("EH") to J.G.'s IEP for 1987–88. After much colloquy, the team agreed that J.G.'s learning disability was the principal reason for his academic failings. A secondary coding of EH was added to his IEP. Plaintiff's Exhibit 75.

At the August 17, 1987 meeting of the LEPT, J.G.'s mother (Mrs. G.) agreed to the IEP for the 1987–88 school year. The team also agreed that Wells Memorial was an appropriate placement. J.G. was passed to the third grade for the 1987–88 school year. Plaintiff's Exhibit 78.

Unfortunately, the promotion did not have a salutary effect. At the November 18, 1987 meeting of the LEPT, Mrs. G. informed the team that J.G. had inhaled gas for a second time. School District Exhibit 4F. In December 1987, J.G. attempted to commit suicide. After this attempt, J.G. was taken by his mother to the Cheshire Medical Center. On January 4, 1988, he was transferred to the inpatient psychiatric unit at the Floating Hospital of New England Medical Center Hospitals ("NEMC" or "the Center"). Plaintiff's Exhibit 17.

NEMC concluded that J.G.'s conduct resulted from major depression and advised that a residential treatment for J.G. be considered. It was the Center's opinion that J.G.'s home environment would be likely to exacerbate his emotional difficulties. School District Exhibits 1E, 1A; Plaintiff's Exhibits 15, 20.

J.G. returned to the Wells Memorial School after he was released from NEMC in March 1988. School District Exhibit 3. The parents and the team were unable to agree on a placement for the remainder of the 1987–88 school year, and J.G. remained at Wells. Plaintiff's Exhibit 44.

LEPT meetings were held during the summer and fall to develop an IEP and to discuss placement for the 1988–89 school year. In June, the team agreed that a primary coding of LD and a secondary coding of EH were still appropriate. School District Exhibit 4L.

In July, the LEPT agreed that Wells Memorial was not the least restrictive environment for J.G., and began discussing a day placement in the Emotionally Handicapped Program at the Symonds School. Mrs. G. expressed reservations with this proposal. Plaintiff's Exhibit 80.

In August, Mrs. G. stated her preference for placing J.G. in a residential program. Wells Memorial's teaching principal Dotty Frazier informed her that the district was willing to assume responsibility for the educational components of a residential placement, but that the team's position was that a residential placement was not required for educational purposes. Plaintiff's Exhibit 81.

In September, the LEPT offered the EH program at the Symonds School for the 1988–89 school year. J.G.'s mother and her parent advocate, Elaine Holden, demurred. Plaintiff's Exhibit 83.

In November, J.G.'s parents rejected the proposed placement at the Symonds School.

They were concerned that J.G.'s peer group primarily would be coded EH and that the behaviors exhibited within the Symonds EH program would provide inappropriate modeling for J.G. Plaintiff's Exhibit 54; N.H. Dept. of Education Exhibit 80.

On November 22, 1988, Harrisville requested a due process hearing. Plaintiff's Exhibit 54. In January 1989, the parents notified Harrisville that they intended "to request at the January 18, 1989 Due Process Hearing that the [residential] Eagle Hill School be found to be the appropriate educational placement for J.G.". Plaintiff's Exhibit 59.

At a pre-hearing conference held on January 11, 1989, the parties agreed that the sole issue in need of resolution at the due process hearing was the propriety of the placement proposed by the district. Plaintiff's Exhibit 103. In March, before the due process hearing was held, the LEPT rejected the Eagle Hill placement because it was primarily a placement for learning disabled children and would not be able to meet J.G.'s intense emotional needs. Plaintiff's Exhibit 86.

The due process hearing was held at the Department of Education on July 18, 19, and 20, 1989—nearly one month after the 1988–89 school year had ended. The hearing officer concluded that the Symonds School was an appropriate placement to implement J.G.'s IEP.

In May 1989, NEMC, in a follow-up evaluation, concluded that "J.G. is *not* a candidate for a program serving primarily emotionally disturbed youngsters, though he clearly has emotional issues." Plaintiff's Exhibit 38.

The parties again were unable to agree on J.G.'s placement for the 1989–90 school year. Harrisville, acting pursuant to the May 1989 NEMC evaluation, abandoned its attempts to place J.G. in an EH program and instead proposed placement at the Benjamin Franklin Learning Disabilities Program, a day program in Keene, New Hampshire. The parents, however, sought placement at the residential Greenwood School in Putney, Vermont. Harrisville requested a due process hearing. The hearing officer ruled that the IEP and placement proposed for the 1989–90 school year were appropriate. This decision has not been appealed.

### 2. Discussion

All that is properly before the Court is plaintiff's assertion that the 1988–89 placement offered J.G. was inappropriate. Plaintiff has no monetary claim.[2] J.G.'s parents did not unilaterally place him in a private school, and he has been maintained in his *status quo* placement at no expense to them. Moreover, the record indicates that plaintiff has incurred no out-of-pocket attorney's fees relative to the instant matter. Because the 1988–89 school year has long since expired and plaintiffs can make no claim for damages, Harrisville argues that the case is moot.

Under Article III, Section 2 of the Constitution, this Court's jurisdiction only extends to actual cases and controversies. *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 546, 96 S.Ct. 2791, 2796, 49 L.Ed.2d 683 (1976). Moreover, the controversy must be extant at all stages of review, and not merely at the time the complaint was filed. *Steffel v. Thompson*, 415 U.S. 452, 459 n. 10, 94 S.Ct. 1209, 1216 n. 10, 39 L.Ed.2d 505 (1974).

The Supreme Court had occasion to address the issue of mootness in EHA actions in *Honig v. Doe*, 484 U.S. 305, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988). *Honig* involved the so-called "stay-put" provision of the EHA, which, in the absence of parental agreement to the contrary, requires a disabled child to remain in his/her current

---

**2.** Plaintiff does request reimbursement for the 1988 NEMC evaluations. However, because this is the first instance that he has raised this issue, the request is not properly before the Court. Absent compelling justification, issues are preserved for judicial review only after they first have been presented to the administrative hearing officer. *See, e.g., David D. v. Dartmouth School Committee*, 775 F.2d 411, 424 (1st Cir. 1985) *cert. denied* 475 U.S. 1140, 106 S.Ct. 1790, 90 L.Ed.2d 336 (1986); *Colin K. by John K. v. Schmidt*, 715 F.2d 1, 5–6 (1st Cir.1983); *Christopher W. v. Portsmouth School Committee*, 877 F.2d 1089, 1094 (1st Cir.1989).

educational placement pending completion of any review proceedings. 20 U.S.C. § 1415(e)(3). In that case, the school district, over the parents' objections, expelled two emotionally disturbed children for violent and disruptive conduct. The district court held that there was no "dangerousness" exception to the stay-put provision and that the school district's action constituted a change in placement prohibited under § 1415(e)(3). On appeal, the Ninth Circuit affirmed.

The Supreme Court ruled that the action concerning respondent John Doe was moot, since he was 24 years old and no longer entitled to the benefits and protection of the EHA.[3] However, with regard to respondent Jack Smith, the Court held that the case was not moot because there was a "reasonable expectation" that the controversy was "capable of repetition, yet evading review." See 108 S.Ct. at 601–04. It reasoned:

> In the absence of any suggestion that respondent has overcome his earlier difficulties, it is certainly reasonable to expect, based on his prior history of behavioral problems, that he will again engage in classroom misconduct. Nor is it reasonable to suppose that Smith's future educational placement will so perfectly suit his emotional and academic needs that future disruptions are improbable ... we think it reasonable to expect that respondent will again engage in the type of misconduct that precipitated this suit.

Id. at 602–03. Therefore, the Court concluded that there was "a sufficient likelihood that [respondent] will again be wronged in a similar way," Id. at 604 (citation omitted).

Other federal courts have had occasion to apply the reasonable expectation standard in determining whether a controversy was capable of repetition yet evading review. Abney by Kantor v. District of Columbia, 849 F.2d 1491 (D.C.Cir.1988) involved a mentally retarded teenager who, for a time, could not safely be bused to his special school due to poor health. The par-

ents brought suit because the District did not arrange for substitute instruction. The court held that the parents' subsequent approval of a modified plan of instruction did not render the cause of action moot since there was a reasonable likelihood that the student again would be too ill to attend school and that the dispute would recur. Id. at 1495.

In DeVries by DeBlaay v. Spillane, 853 F.2d 264 (4th Cir.1988), a parent challenged the placement offered by the school district because she sought to have her son educated at a neighborhood school. The Fourth Circuit held that the parent's cause of action was not moot, despite the fact that the challenged IEP had been superseded by a plan which offered different placement. It found the School District's refusal to educate the student at the parent's chosen school to be an issue capable of repetition yet evading review. Id. at 268.

In Daniel R.R. v. State Board of Education, El Paso Independent School District, 874 F.2d 1036 (5th Cir.1989), the Fifth Circuit ruled that a dispute about the school district's mainstreaming policy was not moot because "[t]he parties have a reasonable expectation of confronting this controversy every year that Daniel is eligible for public education." Id. at 1041.

The crux of the instant dispute is the propriety of the placement offered to J.G. for the expired 1988–89 school year. Honig makes clear that such a controversy is still justiciable only if this Court has a "reasonable expectation" that the dispute could arise again. 108 S.Ct. at 602. Several facts lead the Court to the conclusion that it could not.

Since the end of the 1988–89 school year, there has been a significant change in both J.G.'s condition and the school district's position. The psychological assessment done by NEMC in May of 1989 concluded that J.G.'s emotional status had improved. NEMC found that J.G. was no longer a suicide risk and that his behavior patterns were less worrisome. (Plaintiff's Exhibit 38).

---

**3.** The EHA limits eligibility to disabled children    between the ages of 3 and 21.

The material change implied by this finding was reflected in the IEP for the 1988–89 school year. Although the parties again were unable to agree on placement in the 1989-90 school year and the dispute again went to a due process hearing, it did not involve placement at the Symonds School, nor even the extent to which J.G. required emotional services. To the contrary, all parties agreed that J.G. should be placed in a school for the learning disabled. Their disagreement concerned the proper school for the learning disabled.

Moreover, J.G. is now thirteen years old and has completed fifth grade. Since the Symonds School only enrolls students in grades two through five, there is no reasonable likelihood that Harrisville again would offer it as a placement, even if he were to return to the Harrisville School District and another dispute about the extent of J.G.'s need for emotional services were to arise. These facts lead this Court to the conclusion that there is no reasonable expectation of recurrence of the instant controversy.

The instant case differs in kind from other EHA disputes that have been characterized as capable of repetition, yet evading review. What was common to those cases was the possibility that the school districts would continue specific *policies* which plaintiffs claimed were both offensive to the EHA and harmful to them.

*Honig*, for example, decided a dispute between differing interpretations of the so-called "stay-put" provision of the EHA. *Abney by Kantor* ruled that school districts violate the EHA when they do not provide substitute instruction for handicapped students who cannot be transported to school. *DeVries by DeBlaay* resolved whether a district is required to place a handicapped student in the student's neighborhood school. And, *Daniel R.R. v. State Board of Education, El Paso Independent School District*, cleared up differing interpretations of the EHA's mainstreaming requirement. Thus, in each of these instances, it was reasonable to expect that the school district would adhere to its interpretation of the EHA, touching off future disputes with the disagreeing plaintiffs.

In contrast, this controversy involves the legitimacy of a particular placement offer which subsequently was abandoned and no longer is possible. It is conceivable that plaintiffs and defendant again may clash over the extent of J.G.'s needs for emotional services. However, for such a controversy to take place, J.G. both would have to return to Harrisville and to relapse into his fourth grade emotional state. And even if this unlikely scenario were to take place, J.G.'s grade level almost assuredly would preclude him from being offered the same placement disputed in the instant matter. *See Christopher P. by Norma P. v. Marcus*, 915 F.2d 794, 803 (2d Cir.1990) (affirming dismissal of EHA claim as moot).[4]

### 3. Conclusion

For the reasons herein stated, the Court finds that the issue of the propriety of the placement offered J.G. for the 1988–89 school year to be moot. Accordingly, defendant's motion to dismiss this case as moot is granted. Plaintiffs' motion to sub-

---

4. In *Christopher P.*, the student was admitted to the Greater Bridgeport Children's Services Center ("GBCSC"), the children's unit of a local mental health center. Following recommendations from a placement team, Christopher was placed in "the Family School" for the 1984–1985 school year. When that school year ended, GBCSC concluded that Christopher no longer needed its services and Christopher was discharged from the Family School. That conclusion was upheld at an administrative hearing and Christopher filed an action in federal court. The court issued a temporary restraining order on September 5, 1985, requiring that Christopher be returned to the Family School. On September 30, 1985, Christopher's mother vol-

untarily removed him from that school; the district court then dismissed the claim as moot. That dismissal was affirmed by a panel of the Second Circuit of Appeals which stated:

> we are not convinced that it is "reasonably likely" that Christopher will again be subjected to the behavior of which he complains. In order for the current dispute to recur, Christopher would first have to be referred back to GBCSC and accepted by the admission team. He would then have to attend the Family School and be discharged by his Treatment Team against the wishes of his mother. This seems an unlikely set of circumstances.

*Christopher P.*, 915 F.2d at 803-04.

mit additional evidence (document no. 27) and defendant's motion for summary judgment (document no. 28) are denied.

SO ORDERED.