**Daoud MOSS, by his grandmother and next friend, Jalil MUTAKABBIR, and Jalil Mutakabbir, Plaintiffs,**

**v.**

**Franklin L. SMITH, Superintendent of the District of Columbia Public Schools, and the District of Columbia, Defendants.**

Civ. A. No. 92–1595 SSH.

United States District Court, District of Columbia.

July 13, 1992.

Margaret A. Kohn, Washington, D.C., for plaintiffs.

Melvin Bolden, Asst. Corp. Counsel, D.C., Washington, D.C., for defendants.

## OPINION

STANLEY S. HARRIS, District Judge.

Before the Court is plaintiffs' motion for a temporary restraining order (TRO). Upon consideration of the motion, and the oral arguments presented to the Court on July 10, 1992, in support thereof and in opposition thereto, the Court *sua sponte* dismisses the case for lack of subject matter jurisdiction.

### Facts

Plaintiff Jalil Mutakabbir brings this action on behalf of her grandson, Daoud Moss, against Franklin Smith in his capacity as Superintendent of the District of Columbia Public Schools (DCPS) and the District of Columbia (D.C.). Plaintiff Moss is an eleven year-old "Seriously Emotionally Disturbed and Learning Disabled" student. For the 1991–92 school year Moss was enrolled at the School for Contemporary Education (SCE), where he was funded by the DCPS pursuant to the Individuals with Disabilities Education Act (IDEA). *See* 20 U.S.C. § 1400 *et seq.* Currently, SCE has a contract dispute with the DCPS over the amount of funds the DCPS owes SCE for Moss and the other DCPS students who attended SCE during the 1991–92 school year. Consequently, SCE has notified the DCPS that, absent assurances from the DCPS that a certain sum will be paid to SCE for the 1992–93 school year, SCE will not reserve spaces for the DCPS students. Plaintiffs, believing SCE to be the only appropriate placement for Moss and fearing the loss of his space at the school, filed this action. Plaintiffs seek a TRO "requiring DCPS to issue a written letter of agreement to SCE regarding the SCE 1992–93 rates for tuition and related services in the amount of $28,696.00 at [SCE] for Daoud Moss for the 1992–93 school year forthwith." Complaint, at 9.

1. Hereinafter, the Court refers to guardian to include both parent and guardian because Mu-

### Discussion

The Statutory Framework

The IDEA requires in part that D.C. provide a "free appropriate public education" to all children with disabilities. 20 U.S.C. § 1412. In addition, the IDEA "establishes an elaborate procedural mechanism to protect the rights of handicapped children." *Smith v. Robinson*, 468 U.S. 992, 104 S.Ct. 3457, 3467–68, 82 L.Ed.2d 746 (1984). These procedures are set forth at 20 U.S.C. § 1415(b). Section 1415(b) provides in part that parents or guardians must be provided "an opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(1)(E).[1] When a guardian makes a complaint, she is entitled to a due process hearing before either the state or local educational agency. *See id.* § 1415(b)(2). If the hearing is held before the local educational agency, she is entitled to appeal the decision to the state educational agency. *See id.* § 1415(c). At these hearings, the guardian may be accompanied by both counsel and experts, present evidence and cross-examine witnesses, as well as obtain a record of the hearing and written findings and decisions of the hearing officer. If aggrieved by the findings and decision of the hearing officer, the guardian may file suit in federal court pursuant to 20 U.S.C. § 1415(e)(2). *See id.* § 1415(e)(2).

Subject Matter Jurisdiction

Exhaustion

 Plaintiffs base federal jurisdiction of this action on § 1415(e)(2). This section provides in part that:

[a]ny party aggrieved by the findings and decision made under subsection (b) of this section who does not have the right to an appeal under subsection (c) of this section, and any party aggrieved by the findings and decision under subsection (c) of this section, shall have the

takabbir is Moss's grandmother.

right to bring a civil action with respect to the complaint presented pursuant to this section ... in a district court of the United States without regard to the amount in controversy.

*Id.* § 1415(e)(2).

This language makes it clear that Congress intended plaintiffs to exhaust the administrative remedies under the IDEA before bringing suit in federal court. *See Smith v. Robinson,* 104 S.Ct. at 3468 (noting that allowing an equal protection claim without requiring exhaustion under the predecessor statute to the IDEA "[n]ot only would ... render superfluous most of the detailed procedural protections outlined in the statute, but, more important, it would also run counter to Congress' view that the needs of handicapped children are best accommodated by having the parents and the local education agency work together to formulate an individualized plan for each handicapped child's education"). Here, plaintiffs have not exhausted the administrative process: they have made no complaint to the DCPS nor have they requested a due process hearing.[2]

Therefore, plaintiffs may bring this suit only upon a showing that exhaustion of the administrative remedies would be futile or inadequate. *Cox v. Jenkins,* 878 F.2d 414, 418–19 (D.C.Cir.1989) (citing *Honig v. Doe,* 484 U.S. 305, 108 S.Ct. 592, 606, 98 L.Ed.2d 686 (1988)). Plaintiffs have failed to make such a showing. Plaintiffs contend that "without the TRO, [Moss] will in all likelihood be denied a free appropriate education during the 1992–93 school year." Plaintiffs' Memorandum, at 1. Plaintiffs' statement is based on the assumption that the "DCPS has no placement for him within the public schools." *Id.* However, at oral argument, defendants informed the Court that the DCPS has a place for Moss at the Rose School for the 1992–93 school year and offered to have an education specialist from the DCPS testify to the appropriateness of the Rose School for Moss.[3]

Administrative Remedy Not Futile

The offering of such testimony demonstrates the necessity for the exhaustion requirement and rebuts any claim as to the futility of the administrative process. Having the Court make an appropriateness determination at a hearing for a TRO would be a complete end-run around the procedures established by the statute, undermining the purpose of the exhaustion requirement. As stated by the Circuit Court in *Cox:*

The exhaustion doctrine serves several important purposes: it prevents courts from interrupting the administrative process permanently; it allows the agency to apply its specialized expertise to the problem; it gives the agency an opportunity to correct its own errors; it ensures that there will be a complete factual record for the court to review; and it prevents the parties from undermining the agency by deliberately flouting the administrative process.

*Cox v. Jenkins,* 878 F.2d at 419 (citing *McKart v. United States,* 395 U.S. 185, 89 S.Ct. 1657, 1662–63, 23 L.Ed.2d 194 (1969)).

In addition, the DCPS's offer of an alternative placement illustrates that exhausting the administrative procedures would not have been either futile or inadequate. Plaintiffs have known that SCE might not accommodate Moss for the 1992–93 school year since at least May 21, 1992, when the Administrative Director wrote the parents of the DCPS students updating them on the negotiations between the DCPS and SCE. *See* Sibley Decl., Exh. 2. If plaintiffs had filed a complaint with the DCPS

2. Indeed, there is some question as to whether any action under § 1415(b)(1) has occurred to trigger the procedural safeguards and administrative procedures. The DCPS has taken no action as to Moss regarding the 1992–93 school year. Therefore, it could be argued that no action has been taken to which a complaint could be filed pursuant to § 1415(b)(1)(E). However, given that the DCPS has an obligation to notify a child prior to a change in placement, *see* 20 U.S.C. § 1415(b)(1)(C), the Court assumes inaction could be the basis of a complaint and analyzes whether plaintiffs' failure to exhaust the administrative process should be excused.

3. The Rose School is a school for seriously emotionally disturbed children operated by the D.C. Department of Human Services and the DCPS.

upon first learning of the contract dispute with SCE, this issue might have been resolved through the administrative process prior to the date of the filing of the motion for a TRO. *See Roher v. District of Columbia,* 1989 WL 330800, *4 n. 8, 1989 U.S.Dist. LEXIS 12017, * 10 n. 8 (D.D.C. Oct. 11, 1989) (citing 34 C.F.R. § 300.512(a) and D.C.Mun.Reg. tit. 5, § 3021.1) ("Although there can be a lag, the time between the request for the hearing and the final decision reached is no more than 45 days.... [T]he due process hearing, while it could consume several days or more, usually would be completed within one day or less. In any event, D.C. regulations require the Hearing Officer to render the decision within ten days of the hearing.").

Administrative Remedy Not Inadequate

However, the Court recognizes that, if plaintiffs pursue their administrative remedies and a hearing officer determines that the only appropriate placement for Moss is SCE, there may be no place available for him at SCE. This might indeed render the administrative process inadequate. Nevertheless, the burden is on plaintiffs to show that this is the likely result of an administrative hearing, and plaintiffs fail to meet this burden. At oral argument, plaintiffs contended that the Rose School would not be an appropriate placement, and that the only satisfactory placement is SCE. However, in their motion and in the declaration of plaintiff Mutakabbir in support of the motion, plaintiffs assert that last year Mutakabbir applied on behalf of Moss to the Rose School but its enrollment was at capacity for the 1991–92 school year. *See* Mutakabbir Decl., at ¶¶ 8–9; Plaintiffs' Memorandum, at 3 & n. 1. In addition, although plaintiffs may prefer SCE over the Rose School, they are entitled to "an appropriate education, not the best education possible." *Angevine v. Smith,* 959 F.2d 292, 296 (D.C.Cir.1992) (citing *Hendrick Hudson Central School Dist. v. Rowley,* 458 U.S. 176, 102 S.Ct. 3034, 3051, 73 L.Ed.2d 690 (1982)). Furthermore, to the extent the administrative process might be inadequate due to the purportedly imminent action by SCE, plaintiffs' delay in filing an administrative complaint in part created the exigency. Therefore, the Court finds that plaintiffs have not shown that exhaustion would be either futile or inadequate.

Stay–Put Provision

Likewise, plaintiffs have failed to exhaust their administrative remedies relating to their claim under the stay-put provision of the IDEA. 20 U.S.C. § 1415(e)(3). This provision provides in part that "[d]uring the pendency of any proceedings conducted pursuant to [§ 1415], ... the child shall remain in the then current education placement." *Id.* Technically, no proceeding pursuant to § 1415 is pending. Therefore, plaintiffs are not entitled to enforcement of the stay-put provision unless filing this action to enforce the provision creates a "pending proceeding." The Court finds that it does not. Nevertheless, even if the statute were so interpreted, plaintiffs have not made sufficient showing to be entitled to a stay-put order. The stay-put provision is only triggered when there is a proposal to change a child's placement. *See Roher,* 1989 WL 330800 at *4, 1989 U.S.Dist. LEXIS at * 7. Plaintiffs' assertion that the DCPS will not be able to return Moss to SCE due to what may be an imminent lack of space at SCE does not automatically establish that there will be a change in Moss's "placement." In this context, "placement refers to the overall educational program offered, not the mere location of the program." *Id.* (citing *Knight v. District of Columbia,* 877 F.2d 1025 (D.C.Cir.1989)). Therefore, for plaintiffs to be entitled to relief under the stay-put provision, they would have to "identify, at a minimum, a fundamental change in, or elimination of a basic element of the education program in order for the change to qualify as a change in educational placement." *Lunceford v. District of Columbia Bd. of Educ.,* 745 F.2d 1577, 1582 (D.C.Cir.1984). In addition, "[s]uch a showing must be made at the administrative level." *Roher,* 1989 WL 330800 at *3, 1989 U.S.Dist. LEXIS at * 7. Plaintiffs have done neither, and therefore the Court does not have jurisdiction to determine if they

are entitled to injunctive relief under the stay-put provision.

*Conclusion*

Accordingly, for the reasons stated above, the Court finds that plaintiffs have failed to exhaust their administrative remedies or to show that such exhaustion would be futile or inadequate. Therefore, the Court *sua sponte* dismisses this case for lack of subject matter jurisdiction.