**Lynne SCHLUDE, parent of a handicapped child, Marcus O., Plaintiff,**

v.

**NORTHEAST CENTRAL SCHOOL DISTRICT, Defendant.**

No. 95 Civ. 371 (WCC).

United States District Court, S.D. New York.

July 24, 1995.

Family Advocates, Inc., Poughkeepsie, NY, (Rosalee Charpentier, of counsel), for plaintiff.

Shaw & Silveira, Highland, NY (David S. Shaw, of counsel), for defendant.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

Plaintiff Lynne Schlude, the parent of a learning disabled child, has brought this action against defendant Northeast Central School District under 42 U.S.C. § 1983 and the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq. Defendant has made a motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(1), on the ground that this court lacks subject matter jurisdiction because plaintiff has failed to exhaust her state administrative remedies. For the reasons set forth below, defendant's motion to dismiss is granted.

### BACKGROUND

#### A. The IDEA

The IDEA is a comprehensive statutory framework established by Congress to aid the states in providing handicapped children with a "free appropriate public education." 20 U.S.C. § 1400(c); *Mrs. W v. Tirozzi*, 832 F.2d 748, 750 (2d Cir.1987). To safeguard the right to a free appropriate public education, the IDEA imposes elaborate procedural requirements to which states receiving federal financial assistance must adhere. *See* 20 U.S.C. § 1415. The handicapped child's parents and teachers and a representative of the school district must work together to formulate an individual education program ("IEP") tailored to the needs of the student. *See* 20 U.S.C. §§ 1401(a)(19), 1414(a)(5), 1415(b). The IEP must be reviewed at least annually. *See* 20 U.S.C. § 1414(a)(5).

Parents must be given an opportunity to bring complaints about "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of

a free appropriate public education to such child." 20 U.S.C. § 1415(b)(1)(E). Complaints are reviewed at an "impartial due process hearing" conducted by the state or local educational agency. *See* 20 U.S.C. § 1415(b)(2); N.Y.Educ.Law § 4404(1). If a hearing is conducted at the local level, an appeal may be had to the state agency. *See* 20 U.S.C. § 1415(c); N.Y.Educ.Law § 4404(2). An aggrieved party may then appeal to a federal or state court, which may grant appropriate relief. *See* 20 U.S.C. § 1415(e)(2). Unless the parents and school district agree otherwise, the child shall remain in his or her then current educational placement for the duration of the review proceedings. *See* 20 U.S.C. § 1415(e)(3); N.Y.Educ.L. § 4404(4).

B. Facts

Against this statutory backdrop, we turn to the circumstances of this particular case. Treating the allegations in the complaint as true, as we must in considering a motion to dismiss, the plaintiff in this action is the mother of a 14–year–old child, Marcus, who has been classified as learning disabled under the IDEA and corresponding New York state laws. In 1992, when plaintiff resided in the Dover Union Free School District, Marcus was evaluated by Dr. Leonore Rivera, who recommended that Marcus receive language training from a teacher trained in the Orton–Gillingham method to remediate the reading and writing difficulties caused by his dyslexia. Marcus thereafter received Orton–Gillingham instruction in the Dover School District.

In early February 1994, plaintiff moved into the Northeast Central School District (the "District"), where she and Marcus currently reside. On March 10, 1994, the District's Committee on Special Education (the "CSE") met to consider Marcus's placement. The written IEP that the CSE offered to Marcus did not mention Orton–Gillingham instruction. Nevertheless, Marcus continued to receive Orton–Gillingham tutoring at his new school in the District.

On September 6, 1994, the CSE met to consider Marcus's IEP for the 1994–95 school year. Plaintiff was informed that the District would no longer provide Orton–Gillingham instruction for Marcus, because the District's only teacher trained in that method was going on maternity leave. On September 12, 1994, plaintiff requested an impartial hearing to contest the CSE's decision and to determine an appropriate placement for Marcus. Plaintiff also requested that the Orton–Gillingham tutoring, which she contended was part of Marcus's then current placement, be restored during the pendency of the review proceedings. On September 26, 1994, the CSE chairperson refused to reinstate the Orton–Gillingham sessions on the ground that they were not part of Marcus's then current placement because they were not written into his IEP.

On November 4, 1994, the impartial hearing convened. The impartial hearing officer (the "IHO") first addressed the parties' preliminary disagreement concerning Marcus's then current placement. The IHO ruled that he did not have jurisdiction over questions of pendency placement. Plaintiff requested an adjournment of the proceeding to seek review of that determination.

Plaintiff filed suit in this court on January 19, 1995, seeking immediate relief on the issue of Marcus's placement during the pendency of the state administrative proceeding challenging his 1994–95 IEP. In late February 1995, plaintiff and the District agreed to request an independent recommendation for Marcus's placement from Dr. Judith R. Birsch. Pursuant to that agreement, both the federal court and state administrative proceedings were stayed until Dr. Birsch completed her evaluation. During the entire 1994–95 school year, therefore, Marcus received no Orton–Gillingham instruction. Plaintiff alleges that throughout that time Marcus's academic performance and attitude deteriorated.

On June 12, 1995, Dr. Birsch issued her report, which recommended that Marcus be enrolled in the Kildonan School for at least two of his remaining years of high school. Kildonan is a local private school that specializes in teaching learning disabled children and would provide Marcus with intensive Orton–Gillingham instruction. Failing enrollment in Kildonan, Dr. Birsch recommended

that Marcus receive private language instruction during the summer and made suggestions for improving the effectiveness of his public school education. The District rejected Dr. Birsch's recommendations on June 27, 1995.

Plaintiff then filed an amended complaint seeking injunctive and declaratory relief under 42 U.S.C. § 1983 and the IDEA, 20 U.S.C. § 1400 et seq. Plaintiff asks us, *inter alia*, to declare that the District's refusal to provide Marcus with Orton–Gillingham instruction violated 20 U.S.C. § 1415(e)(3) by failing to maintain Marcus in his then current placement. Plaintiff also requests that we issue a preliminary injunction ordering the District to pay for Marcus to attend Kildonan while the administrative proceedings challenging his IEP are pending.

The District has moved to dismiss this action for lack of subject matter jurisdiction. Defendant argues that plaintiff has failed to exhaust the administrative remedies available to her, as required by 20 U.S.C. § 1415(e)(2) and 20 U.S.C. § 1415(f). We agree.

## DISCUSSION

■ The procedural due process mechanism established by the IDEA requires that an aggrieved party file a complaint at the local level, if possible, and then appeal to the state educational agency before filing a civil action in state or federal court.[1] *See* 20 U.S.C. § 1415(b), (c), (e); *Mrs. W*, 832 F.2d at 756. If a plaintiff does not exhaust his or her state administrative remedies, the reviewing court has no subject matter jurisdiction over the civil action. *See Hope*, 872 F.Supp. at 19; *Stellato v. Board of Educ. of Ellenville Cent. Sch. Dist.*, 842 F.Supp. 1512, 1515 (N.D.N.Y.1994); *Vander Malle v. Ambach*, 667 F.Supp. 1015, 1029 (S.D.N.Y.1987). The exhaustion doctrine "prevents courts from undermining the administrative process

and permits an agency to bring its expertise to bear on a problem as well as to correct its own mistakes." *Heldman v. Sobol*, 962 F.2d 148, 159 (2d Cir.1992).

■ Exhaustion is not an inflexible rule, however. *See Mrs. W*, 832 F.2d at 756. The Second Circuit has recognized that courts may excuse a party's failure to exhaust the available state administrative remedies where:

> (1) it would be futile to use the due process procedures …; (2) an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law; [or] (3) it is improbable that adequate relief can be obtained by pursuing administrative remedies (e.g., the hearing officer lacks the authority to grant the relief sought)….

*See id.* (quoting legislative history of IDEA); *see also Heldman*, 962 F.2d at 158 n. 11.

Plaintiff does not dispute that she filed this suit instead of requesting a determination of Marcus's pendency placement at the state level. The issue we must decide, therefore, is whether the circumstances of this case fall within any of the exceptions to the exhaustion requirement. If not, we lack subject matter jurisdiction over this action and must dismiss it.

A. Exceptions to the Exhaustion Requirement

1. Futility

■ We first consider whether plaintiff may be excused for failing to exhaust the available administrative remedies because seeking relief at the state level would have been futile. Defendant argues that plaintiff could have obtained a determination of Marcus's pendency placement through either of two procedures: by appealing the IHO's jurisdictional ruling to a State Review Officer or

---

1. Plaintiff's § 1983 claim is subject to the same exhaustion requirement as her IDEA claims. Section 1415(f) provides that the IDEA is not the exclusive means of protecting the rights of handicapped children. A complainant may pursue any other available federal remedy, except that if the relief sought is also available under the IDEA, the complainant must satisfy the same exhaustion requirement that applies to IDEA claims. *See* 20 U.S.C. § 1415(f). The legislative history of § 1415(f) states clearly that claims under 42 U.S.C. § 1983 are subject to the exhaustion requirement. *See Mrs. W*, 832 F.2d at 755; *Hope v. Cortines*, 872 F.Supp. 14, 19 (E.D.N.Y.1995).

by appealing the District CSE's refusal to provide Marcus with Orton–Gillingham tutoring as part of his pendency placement directly to the Commissioner of Education.

Defendant has provided us with case law that makes it clear that the Commissioner of Education has jurisdiction over contested pendency determinations.[2] *See, e.g., Appeal of a Student with a Disability,* 33 Ed.Dept. Rep. 16 (1993) (following school district's refusal to permit student to return to school he attended before suspension, Commissioner ordered student's return to regular educational setting during pendency of his parent's appeal challenging his IEP); *Appeal of a Student with a Disability,* 33 Ed.Dept.Rep. 269 (1993) (Commissioner upheld school district's refusal to provide particular tutor to student as part of student's then current placement pending appeal challenging student's IEP). Presumably, the Commissioner's jurisdiction to hear these matters derives from N.Y.Educ.Law § 310, which provides that:

> Any party conceiving himself aggrieved may appeal by petition to the commissioner of education who is hereby authorized and required to examine and decide the same.... The petition may be made in consequence of ... any other official act or decision of any officer, school authorities, or meetings concerning any other matter under this chapter....

Plaintiff contends that she need not exhaust the administrative remedies provided under § 310 before filing suit because those remedies are not part of the procedural safeguards provided to handicapped students and their parents under the IDEA. Plaintiff cites no authority for this proposition. Defendant, on the other hand, has referred us to four decisions in which the Commissioner determined the pendency placement of the student on whose behalf an appeal had been brought. *See Appeal of a Student with a Disability,* 33 Ed.Dept.Rep. 16 (1993); *Appeal of a Student with a Disability,* 33 Ed. Dept.Rep. 269 (1993); *Appeals of Students with Disabilities,* 33 Ed.Dept.Rep. 271 (1993); *Appeals of Students with Disabilities,* 33 Ed.Dept.Rep. 276 (1993). In the face of those decisions, we do not doubt that the appeal procedure available to aggrieved parents under § 310 constitutes part of the due process mechanism established by the IDEA, as it has been implemented in New York.

Plaintiff also argues that any attempt to exhaust her administrative remedies at this point would be futile because the thirty-day deadline for appealing an IHO's decision has long since expired. *See* N.Y.Comp.Codes R. & Regs. tit. 8, § 279.2(b). As we stated above, this decision is not based upon the availability or lack thereof of review of the IHO's decision by a State Review Officer. Appeals to the Commissioner, however, must also be filed within thirty days of the date of the event complained of. *See* N.Y.Comp. Codes R. & Regs. tit. 8, § 275.16. It is undisputed that the thirty-day deadline for appealing the CSE's refusal to provide Marcus with Orton–Gillingham instruction as part of his pendency placement has also expired. Therefore, we will address plaintiff's argument in that context.

Plaintiff contends that requiring her to exhaust her administrative remedies would be futile because any appeal she might have taken is now time-barred. If we accepted plaintiff's argument, we would eviscerate the IDEA's exhaustion requirement. All that an aggrieved party would have to do to circumvent the requirement, and proceed straight to federal court, is fail to file a state administrative appeal within the deadline established by the state. This result is patently contrary to the policy underlying the exhaustion doc-

---

**2.** For purposes of this decision, we need not consider the availability of an appeal of the IHO's ruling to the State Review Officer. The defendant has referred us to decisions in which State Review Officers have reviewed rulings on pendency placement issues made by IHOs. *See Application of a Child with a Handicapping Condition,* No. 91–25, decision of State Review Officer dated August 16, 1991; *Application of Bd. of Educ. of Pittsfield Cent. Sch. Dist.,* No. 91–14, decision of State Review Officer dated May 3, 1991.

These decisions suggest to us that the IHO's jurisdictional ruling in this case was in error. Neither of these decisions is on point, however, and it is not clear on the face of the relevant regulations whether a State Review Officer may hear an appeal of a denial of jurisdiction or whether that appeal should be made exclusively to the Commissioner.

trine that state educational agencies should be accorded the first opportunity to bring their expertise to bear on a problem or to correct their own mistakes without the necessity of a costly and intrusive intervention by the courts.

Furthermore, N.Y.Comp.Codes R. & Regs. tit. 8, § 275.16 provides that the Commissioner, in his discretion and for good cause shown, may excuse the failure to file a timely appeal. In this case, the District has represented that it will not oppose on procedural grounds an appeal of the pendency placement question. *See* Memorandum on Behalf of Defendants in Support of Motion to Dismiss, at 3. We have no reason to doubt the District's good faith in this regard. Hence, it is entirely possible that despite her failure to file a timely appeal of the CSE's refusal to provide Marcus with Orton–Gillingham instruction, plaintiff may receive a determination of Marcus's pendency placement from the Commissioner.

It is clear that plaintiff was aware of the administrative procedures for appealing a pendency placement decision.[3] Indeed, during the pendency of plaintiff's challenge to Marcus's 1992–93 IEP, plaintiff appealed to the Commissioner the Dover School District's refusal to retain a particular tutor to provide Orton–Gillingham instruction for Marcus as part of his pendency placement. *See Application of a Student with a Disability,* 33 Ed.Dept.Rep. 269 (1993). The Commissioner's decision in that case was adverse to plaintiff, but that does not alter the fact that this route of appeal is available to parties aggrieved by pendency placement decisions.

Plaintiff's strongest argument is that exhausting her administrative remedies would be futile because the delay that would result from pursuing an appeal to the Commissioner is so substantial that any relief she might obtain would come too late to do Marcus any good. The Second Circuit construes the exhaustion doctrine strictly, however, *see Van-der Malle,* 667 F.Supp. at 1032, and we have

found no cases holding that exhaustion may be excused because of the possibility of delay in obtaining relief.

In *Frutiger v. Hamilton Central School District,* 928 F.2d 68 (2d Cir.1991), the Second Circuit indicated that under certain extraordinary circumstances delay might be the basis for a finding of futility. The facts of that case, however, are quite different from the situation before us. In *Frutiger,* the parents of a learning disabled child filed suit challenging their child's 1989–90 and 1990–91 IEPs. They had previously exhausted their administrative remedies with respect to the 1989–90 IEP. That process was lengthy: the parents requested an impartial hearing in June 1989, received a decision in November 1989, and appealed the decision to the Commissioner, who in March 1990 remanded the case to the CSE to formulate a more specific 1989–90 IEP. The CSE instead began work on the IEP for 1990–91, as by that time the 1989–90 school year was almost completed. *See id.,* at 69–71. In dismissing the parents' appeal of the district court's refusal to hold an evidentiary hearing on issues relating to the 1990–91 IEP, the Second Circuit stated, "We do not doubt that the frustration caused by this experience induced plaintiffs to bypass the administrative process in challenging the CSE's recommended IEP for 1990–91...." *Id.,* at 73. In *dictum,* the Court observed that "if state administrative bodies persistently fail to render expeditious decisions as to a child's educational placement, district courts have the power under [20 U.S.C.] § 1415(e)(2) to assume jurisdiction over the review process on the grounds that exhaustion would be futile or inadequate...." *Id.,* at 74.

In this case, Marcus had no approved IEP for the entire 1994–95 school year. The 1995–96 school year will soon begin, and, unless ordered to, the District will not provide Marcus with Orton–Gillingham instruction. Therefore, it is extremely unlikely that plaintiff and the District will arrive at a

---

**3.** At the impartial hearing, in response to the IHO's jurisdictional ruling, plaintiff's counsel requested an adjournment of the proceeding to "get intervention from an appropriate entity, whether it's the Commissioner of Education or

the State Review Officer to order the status quo placement pending this proceeding." *See* Transcript of Hearing, at 13, attached as Exhibit A to Affirmation of David S. Shaw in Support of Motion to Dismiss.

mutually agreeable IEP for the 1995–96 school year without lengthy administrative proceedings. Plaintiff contends that it may take many months even to obtain a ruling at the state level on Marcus's pendency placement. Therefore, even if that ruling is favorable, plaintiff fears that most of the 1995–96 school year could pass before Marcus receives the type of instruction that she feels is crucial to his academic success.

We certainly appreciate the gravity of Marcus's situation, as plaintiff has described to us the deterioration of his attitude and academic performance over the last year. Nevertheless, there is no demonstrated pattern of inordinate delay by the state administrative officials in this case. Instead, most of the delay has resulted from plaintiff's and the District's agreement to present Marcus's situation to an impartial third party for evaluation—a process that took almost four months to complete. Another two months passed between the plaintiff's request for an adjournment of the state proceedings to seek review of the IHO's ruling and the filing of this suit. Neither party has explained what, if anything, occurred during that period of time. Hence, the delays encountered so far in this case are the result of the parties' attempts to bypass the state procedures, rather than any breakdown in the state's due process mechanism. We see no reason to conclude in this case that the state officials have persistently failed to render expeditious decisions on pendency placement issues. Therefore, the *Frutiger* Court's observation is inapplicable to this case.

■ Pursuing an administrative appeal will of course take time. Nevertheless, conclusory allegations that the state procedures are overly cumbersome and ineffective are not sufficient to support a finding of futility. *See Vander Malle,* 667 F.Supp. at 1032. Plaintiff has provided us with nothing more concrete. On the contrary, in plaintiff's previous pendency placement appeal to the Commissioner, she received a decision less than two months after she filed her notice of intent to appeal. *See Appeal of a Student*

*with a Disability,* 33 Ed.Dept.Rep. 269 (1993) (notice of intent to appeal filed on September 17, 1993; Commissioner's decision issued on November 10, 1993).

Finally, plaintiff contends that exhaustion is not required where its practical effect would be to deny to the aggrieved party the precise interim relief that she seeks. Although plaintiff cites no cases to support this contention, her argument seems to be based on *Vander Malle v. Ambach,* 673 F.2d 49, 52 (2d Cir.1982). In this case, however, requiring plaintiff to exhaust her state remedies may well result in her obtaining a favorable ruling on Marcus's pendency placement and a restoration of his Orton–Gillingham instruction pending the outcome of her challenge to his IEP. *See, e.g., Appeals of Students with Disabilities,* 33 Ed.Dept.Rep. 271 (1993) (ordering school district to continue providing resource room services at parochial schools pending determination of whether District's plan to provide resource room services at nearby public schools constituted change in children's programs that parents could challenge). Accordingly, we do not agree with plaintiff that exhausting her administrative remedies would necessarily be futile.

2. Inadequacy

■ The only remaining ground on which plaintiff's failure to exhaust her administrative remedies might be excused is that any administrative relief she might obtain would be inadequate.[4] Section 1415(e)(3) of the IDEA and N.Y.Educ.Law § 4404(4) provide that during the pendency of administrative proceedings challenging the placement of a handicapped child, that child shall remain in his or her then current placement, unless the parent and the District agree on an alternative interim placement. As described above, the Commissioner clearly has the authority to determine the then current placement and order it implemented.

When plaintiff originally filed suit, she argued that Marcus's then current placement consisted of the services described in his IEP

---

4. Plaintiff does not argue the second exception to the exhaustion doctrine: that the District has adopted a policy or practice of general applica-

bility that is contrary to law. *See Mrs. W,* 832 F.2d at 756.

plus the Orton–Gillingham instruction he had been receiving. Plaintiff has since filed an amended complaint and an amended application for a preliminary injunction contending that, because of the year that Marcus has spent without any Orton–Gillingham tutoring, such a placement would not adequately meet his needs. Instead, plaintiff seeks a pendency placement at the Kildonan School, financed by the District. It may be that the Commissioner does not have the authority to order the relief plaintiff now seeks, which was not by any stretch of the imagination Marcus's current placement at the time his mother commenced the administrative proceedings challenging his IEP. However, plaintiff has failed to convince us that a pendency placement at the Kildonan School is the only adequate interim remedy. We are confident that it is within the power of the Commissioner to order a pendency placement that is adequate under the circumstances. Therefore, we hold that plaintiff does not satisfy any of the exceptions to the IDEA's exhaustion requirement. Accordingly, we lack subject matter jurisdiction over this action.

### B. Laches

 Finally, plaintiff argues that the District is barred by laches from raising the exhaustion argument at this point in the case. Plaintiff notes that this action has been pending since January 1995, and that the District is now arguing for the first time that it should be dismissed for lack of subject matter jurisdiction. The action was stayed, however, by agreement of both parties pending completion of the mediator's report. The District was not required to take any action during that time. Less than two weeks after rejecting the mediator's recommendations, the District filed this motion to dismiss in lieu of answering the complaint. Under these circumstances, we see no basis for concluding that the District has acted in bad faith.

### CONCLUSION

Plaintiff's counsel has done a fine job of convincing us of the seriousness of Marcus's situation and of the need for swift resolution of his pendency placement. We sincerely hope that, once invoked, the state administrative appeals process will function efficiently and fairly on his behalf. We cannot, however, permit parents, however frustrated and concerned they may be, to circumvent the IDEA's exhaustion requirement absent a clear showing that the exhaustion of available administrative remedies would be futile or inadequate. To do so would "open[ ] the door to litigants dissatisfied with educational placement without first affording educators the opportunity to correct any alleged errors." *Hope,* 872 F.Supp. at 22.

For the foregoing reasons, defendant's motion to dismiss for lack of subject matter jurisdiction is granted.

**SO ORDERED.**