**Joshua O. COLE, et al.,**

v.

**METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, TENNESSEE.**

No. 3–96–0852.

United States District Court,
M.D. Tennessee,
Nashville Division.

Feb. 25, 1997.

---

Gary D. Buchanan, Tennessee Protection and Advocacy, Inc., Nashville, TN, for plaintiffs.

Mary E. Johnston, Metropolitan Legal Dept., Nashville, TN, John D. Kitch, Kitch & Garman, Nashville, TN, for defendant.

## MEMORANDUM

HIGGINS, District Judge.

The Court has before it the defendant's motion (filed November 27, 1996; Docket Entry No. 41) for summary judgment; memorandum (Docket Entry No. 42) in support; and the plaintiffs' response (filed December 16, 1996; Docket Entry No. 48). The Court also has before it the plaintiffs' motion (filed December 27, 1996; Docket Entry No. 38) for summary judgment; memorandum (Docket Entry No. 39) in support and the defendant's response (filed January 3, 1997; Docket Entry No. 51) in opposition.

The Court has jurisdiction under 20 U.S.C. § 1415(e)(4)(A) and 28 U.S.C. § 1331.

For the reasons stated below, the defendant's motion for summary judgment will be denied and the plaintiffs' motion for summary judgment will be granted.

## I.

The plaintiffs, by and through their parents, filed this action under 20 U.S.C. § 1415(e)(3)(A) against The Metropolitan Government of Nashville and Davidson County on September 10, 1996. They allege that the defendant has failed to comply with the stay put provision, section 1415(e)(3)(A) of the Individuals With Disabilities Education Act (IDEA), 20 U.S.C. §§ 1401–1484a. Amended complaint (filed December 12, 1996; Docket Entry No. 47).

This action arises from a decision by the defendant to remove a number of students from their programs at Benton Hall, located in Franklin, Tennessee, and place them in Madison School, located in Madison, Tennessee. The plaintiffs are students who are eligible for special education and related services under the provisions of the IDEA. For the 1995–1996 school year, the plaintiffs were placed at Benton Hall in accordance with the plaintiffs' individualized educational programs (IEP's).[1]

At the end of the 1995–1996 school year, each of the plaintiffs' parents engaged in an M-team[2] meeting in order to develop an IEP for each of the plaintiffs for the following school year. At the beginning of August, the parents of the plaintiffs were informed that the defendant had assigned each of the plaintiffs to Madison School for the 1996–1997 school year. Subsequently, the parents of the plaintiffs requested an administrative hearing to dispute the assignment of the plaintiffs to Madison School. Shortly thereafter, the plaintiffs filed a motion for preliminary injunction with their complaint, in this Court, to enforce the stay put requirement of 20 U.S.C. § 1415(e)(3)(A), which was subsequently denied by the Magistrate Judge.

---

1. An IEP is essentially a written statement of the child's abilities, education goals, and services required. See 20 U.S.C. § 1401(20).

2. An "M-team" is a group consisting of, at a minimum, a representative of the school system, a current teacher, one or both of the child's

parents, the child where appropriate, and a person knowledgeable about the child's handicap. See Administrative Policies and Procedures Manual, special education programs, Tennessee Department of Education at § (1)(1).

*See* consent notice (filed September 17, 1996; Docket Entry No. 31) and order (entered September 23, 1996; Docket Entry No. 33). Both parties have moved for summary judgment, and the plaintiffs have renewed their motion for injunctive relief in their amended complaint. *See* amended complaint (filed December 12, 1996, Docket Entry No. 47).

In its motion for summary judgment, the defendant asserts that the plaintiffs have failed to exhaust their administrative remedies. As such, the defendant contends that the plaintiffs' action must be dismissed until such time as an administrative ruling has been determined, and the plaintiffs seek judicial review of the administrative record. Furthermore, the defendant asserts that the plaintiffs have failed to present circumstances indicating that pursuance of administrative remedies would be futile or inadequate, thereby justifying circumvention of the comprehensive scheme established by the IDEA.[3]

In response, the plaintiffs contend that they are not required to exhaust their administrative remedies for a number of reasons. First, the plaintiffs assert section 1415(e)(3)(A) acts as an "automatic injunction" and should have worked to "freeze" the plaintiffs' educational placement as soon as the parents of the plaintiffs demanded administrative hearings under the IDEA. Second, the plaintiffs contend that the provisions of section 1415(e)(3)(A) would be useless as a protection for disabled students if they are required to exhaust their administrative remedies in order to effect the stay put, and as such, exhausting their administrative remedies would be an exercise in futility.

## II.

### *Summary Judgement*

As provided by Federal Rule of Civil Procedure 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202, 211 (1986). In its consideration of the evidence, the Court must view all facts and inferences to be drawn therefrom in the light most favorable to the non-moving party. *Davidson & Jones Dev. Co. v. Elmore Dev. Co.,* 921 F.2d 1343, 1349 (6th Cir.1991).

In order to prevail on a summary judgment motion, the moving party bears the burden of proving the absence of a genuine issue of material fact concerning an essential element of the opposing party's action. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 274 (1986); *Davidson & Jones Dev. Co.,* 921 F.2d at 1349; *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989). A dispute about the material fact must be genuine, that is, "the evidence is such that a reasonable jury could return a verdict for the non-moving party."[4] *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510, 91 L.Ed.2d at 211–12. Since the preponderance of the evidence standard is used in this determination, more than a mere scintilla of evidence in support of the plaintiff's position is required. *Id.* at 252, 106 S.Ct. at 2512, 91 L.Ed.2d at 214.

## III.

### *The Individuals With Disabilities Education Act*

The IDEA provides for substantial federal financial assistance to states which establish "a policy that assures all children with disabilities the right to a free appropriate public education," enact comprehensive procedural safeguards, and fulfill the other eligibility requirements listed by the statute. 20

---

**3.** The Court notes that the defendant asserted additional reasons in support of its motion for summary judgment. *See* Defendant's memorandum (Docket Entry No. 42) in support. Based on its findings on other grounds, the Court need not address these arguments.

**4.** The Supreme Court further explained that a court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby,* 477 U.S. at 251–52, 106 S.Ct. at 2512, 91 L.Ed.2d at 214.

**1218**

U.S.C. § 1412. The IDEA itself also affords extensive procedural rights to parents who believe the schools are failing to fulfill the statutory mandate.[5] 20 U.S.C. § 1415. Finally, the IDEA mandates that during the pendency of any proceedings, absent agency and parental agreement to the contrary, "the child shall remain in the then current educational placement of such child." 20 U.S.C. § 1415(e)(3)(A).

■ Additionally, the provisions of the IDEA require a party to exhaust its administrative remedies before bringing a claim in federal court. 20 U.S.C. § 1415(e)(2). *See Honig v. Doe*, 484 U.S. 305, 326–27, 108 S.Ct. 592, 606, 98 L.Ed.2d 686, 709 (1988); *Waterman v. Marquette–Alger Intermediate Sch. Dist.*, 739 F.Supp. 361, 364–65 (W.D.Mich. 1990). The pertinent provision specifically confers the right to bring a federal civil action to "[a]ny party aggrieved by the findings and decision made" under the administrative procedure. 20 U.S.C. § 1415(e)(2). Likewise, the statutory language of the IDEA following its 1990 amendment, which expressly describes its effect on other laws, reinforces the correctness of this interpretation.[6] 20 U.S.C. § 1415(f). It is well established that initial adjudication at an administrative level is in the best interest of the child. *See Doe v. Smith*, 879 F.2d 1340, 1343–44 (6th Cir.1989), *cert. denied*, 493 U.S. 1025, 110 S.Ct. 730, 107 L.Ed.2d 749 (1990); *see also Association for Retarded Citizens of Alabama v. Teague*, 830 F.2d 158, 160 (11th Cir.1987).[7]

The plaintiffs do not contend that they have exhausted their administrative remedies. Instead, they assert that based on the nature of the stay put provision they are not required to do so and that they fall under at least one of the exceptions to the requirement.

### 1. *Exceptions to the Exhaustion Requirement*

Just as it is recognized that there exists an exhaustion requirement in actions brought under the IDEA, it is well established that there are exceptions to that requirement. Specifically, exhaustion of administrative remedies is not required in cases where such an attempt would be futile. *Honig*, 484 U.S. at 327, 108 S.Ct. at 606, 98 L.Ed.2d at 709; *Smith v. Robinson*, 468 U.S. 992, 1014 n. 17, 104 S.Ct. 3457, 3469 n. 17, 82 L.Ed.2d 746, 766 n. 17 (1984). *See also Harris v. Campbell*, 472 F.Supp. 51, 53–54 (E.D.Vir.1979) (resort to administrative remedies not required in situation wherein defendants refused to provide appropriate education).

The concept of futility encompasses the situation in which the relief to be afforded by the administrative procedures would be inadequate. *Mitchell v. Walter*, 538 F.Supp. 1111, 1115 (S.D.Ohio 1982); *Armstrong v. Kline*, 476 F.Supp. 583, 601–02 (E.D.Pa. 1979), *cert. denied*, 452 U.S. 968, 101 S.Ct. 3123, 69 L.Ed.2d 981 (1981). *But see Ezratty v. Commonwealth of Puerto Rico*, 648 F.2d 770, 778 (1st Cir.1981) (considerations of expertise, accuracy and economy suggest exhaustion still appropriate despite agency's

---

**5.** Such procedural safeguards include written notice to the parents whenever the agency proposes or refuses to change the child's educational placement and an opportunity to present complaints concerning any matter related to the child's educational placement. 20 U.S.C. § 1415(b)(1)(C)(i) and (ii) and (E). Additionally, once a complaint has been lodged, the parents have the right to a due process hearing before a designated agency and the right to appeal the hearing decision. 20 U.S.C. § 1415(b)(2), (c), and (e)(2).

**6.** As amended in 1990, the IDEA provides that it is not to be construed as limiting rights, procedures and remedies otherwise available, "except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsec-

tions (b)(2) and (c) of this section *shall be exhausted to the same extent as would be required had the action been brought under this subchapter.*" 20 U.S.C. § 1415(f) (emphasis added).

**7.** Administrative proceedings provide a number of benefits appropriate to the nature of disputes under the IDEA, including

(1) permitting the exercise of agency discretion and expertise on issues requiring these characteristics; (2) allowing the full development of technical issues and a factual record prior to court review; (e) preventing deliberate disregard and circumvention of agency procedures established by Congress; and (4) avoiding unnecessary judicial decisions by giving the agency the first opportunity to correct any error.

*Teague*, 830 F.2d at 160.

initial failure to provide appropriate administrative remedy).

In addition to their contention that exhausting their administrative remedies would be futile, the plaintiffs assert that the very nature of the stay put rule precludes them from exhausting their administrative remedies. In response, the defendant contends that the plaintiffs have failed to establish that section 1415(e)(3)(A) applies to their circumstances.

### 2. The "Stay Put" Rule of 20 U.S.C. § 1415(e)(3)(A)

Section 1415(e)(3)(A) provides in pertinent part:

> During the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parent or guardian otherwise agree, the child shall remain in the then current educational placement of such child....

■ As numerous courts have ably discussed the history of the IDEA and its provisions, there is no need to reiterate it here. However, it is worth mentioning that one of the primary underlying purposes of the IDEA, to protect the children to whom it applies, extends to the practical concern of ensuring stability of environment for them during due process hearings and judicial review. *Tennessee Dept. of Mental Health and Mental Retardation v. Paul B.*, 88 F.3d 1466, 1472 (6th Cir.1996). "The 'stay put' provision is premised on the rationale that preservation of the status quo, rather than an inappropriate reaction to an emergent situation, provides for the best interests of the child." *Id.*

■ In its motion for summary judgment, the defendant contends that in order to apply the stay put rule, the plaintiffs must establish that they experienced a change in placement. According to the position held by the defendant, a change in placement does not necessarily occur upon a change of physical location of a child's education program. Furthermore, the defendant states that the plaintiffs must make their showing of a change in placement at the administrative level because exhaustion of administrative remedies is required with regard to all aspects of the IDEA, including section 1415(e)(3)(A). Defendant's memorandum in support (Docket Entry No. 42) at 8.

The plaintiffs assert that the stay put rule applies upon the demand of an administrative hearing contesting their change in placement, not after they have proved that there has been a change of placement. First, the plaintiffs assert that the stay put provision, section 1415(e)(3)(A), constitutes an "automatic preliminary injunction" which effects an immediate "freeze" on a child's educational placement. Plaintiffs' response (Docket Entry No. 48) at 2; plaintiffs' memorandum in support (Docket Entry No. 39) at 3. Additionally, they contend that they need not exhaust their administrative remedies because the defendant is violating the procedural protections of the IDEA by refusing to provide for the plaintiffs' placement at Benton Hall. *See Waterman*, 739 F.Supp. at 369. Finally, the plaintiffs assert that pursuing their administrative remedies in an effort to enforce section 1415(e)(3)(A) would be futile, as the section provides for placement during the "pending proceedings." Plaintiffs' response (Docket Entry No. 48) at 3.

As such, the plaintiffs appear to be contending that they should not be required to dispute the applicability of the stay put provision in administrative proceedings. Plaintiffs' response (Docket Entry No. 48) at 2. In order to accept this argument, it must be assumed that the stay put provision applies to the circumstances of each of the plaintiffs. The same assumption must be made in order to accept the argument that exhaustion is excused because the defendant has violated the stay put provision. *See id.* at 3. Thus, the question of exhaustion of administrative remedies becomes secondary to the question of when and under what circumstances section 1415(e)(3)(A) applies to the plaintiffs.

In support of its position, the defendant cites a couple of cases decided by district courts in the other circuits. *See Moss v. Smith*, 794 F.Supp. 11 (D.D.C.1992); *see also Schlude v. Northeast Cent. Sch. Dist.*, 892 F.Supp. 560 (S.D.N.Y.1995). With all due respect to these courts in their analyses of this very difficult problem, the Court is not taken with their rationales for these holdings.

In *Schlude*, a case quite similar to the instant action, the plaintiff asserted that the school district had violated section 1415(e)(3)(A) and sought a preliminary injunction ordering the defendant to pay for the handicapped child to attend a specific school during the pendency of the proceedings under the IDEA. *Schlude*, 892 F.Supp. at 564. That court determined that the plaintiff had not exhausted her administrative remedies and was not excused from doing so. *Id.* at 568. The court's rationale for requiring the plaintiff to exhaust her administrative remedies in *Schlude* is confusing. At one point, the court noted that the practical effect of the requirement could be to cause such delay that the relief provided under the stay put rule would simply arrive too late. *Id.* at 566. While apparently sympathetic to this problem, the Court stated that it had found no authority permitting a plaintiff to avoid exhaustion based on "the possibility of delay in obtaining relief." *Id.* Subsequently, however, the court noted that it did not find that the plaintiff's exhaustion of administrative remedies would be futile. *Id.* at 567.

The court in *Schlude* treated the stay put provision as it does all other sections of the IDEA. In other words, the court seemed to look upon the enforcement of section 1415(e)(3)(A) in the same manner as it looked upon the enforcement of the substantive provisions of the IDEA, the statutory promise to provide disabled children a "free appropriate public education." *See id.*

However, the Sixth Circuit does not appear to be in accord with this treatment of the stay put provision. According to the Sixth Circuit, section 1415(e)(3)(A) is less a substantive promise of the IDEA than a protective mechanism designed to preserve the status quo *while* the plaintiff seeks to enforce the provisions of the IDEA. *See Cordrey v. Euckert*, 917 F.2d 1460, 1468 (6th Cir.1990), *cert. denied*, 499 U.S. 938, 111 S.Ct. 1391, 113 L.Ed.2d 447 (1991).

As further support for its position, the defendant cites two cases from the District of Columbia. Relying on authority [8] which supports the proposition that a plaintiff must "identify" a fundamental change in the education program in order for the stay put provision to apply, the District of Columbia court asserted that "[t]he burden is on the parent, therefore, to make a showing that a change in his or her child's educational placement has occurred." *Roher v. District of Columbia*, No. Civ. A. 89–2425, 1989 WL 330800 at 3 (D.D.C., October 11, 1989). Subsequently, in a later decision, the court held that the plaintiffs must establish the change in placement at the administrative level. *See Moss*, 794 F.Supp. at 14. The court in *Roher* made a substantial leap from "identifying" a fundamental change to "showing" a change in placement. This Court chooses not to make the same leap. As it is not persuaded by these decisions, the Court finds that the burden is not on the parents to prove a change of placement in order to apply section 1415(e)(3)(A).

While it has not passed on this specific issue, the Sixth Circuit has discussed the stay put rule and its nuances in a number of cases. In *Cordrey*, the Court noted that

> "[t]he stay-put provision does not seem to be one of the Acts' procedural requirements . . . . that attempts to ensure an adequate IEP and whose violation would constitute a denial of a free appropriate public education. Rather, the stay-put provision is activated only when a party has *alleged* such a violation and initiated administrative and judicial review."

*Cordrey*, 917 F.2d at 1468 (emphasis added). Subsequently, the Sixth Circuit referred to this passage in its discussion of the stay put rule. *See Paul B.*, 88 F.3d at 1473. Citing *Lunceford*, the Court stated that in order to invoke section 1415(e)(3)(A), a plaintiff must "identify a detrimental change in the elements of an educational program." *Id.* at 1474. The Court noted that the identified change must fall under the IDEA and that there must be a "genuine appealable issue that 'the current educational placement' is the appropriate placement under the Act and should not be changed." *Id.*

Indeed, the substance of the plaintiffs' complaint with the new IEP's concerns their

---

8. *See Lunceford v. District of Columbia Bd. of* *Educ.*, 745 F.2d 1577 (D.C.Cir.1984).

placement at Madison School as opposed to Benton Hall. Whether this alteration to the IEP's actually constitutes a "change in placement" will be considered at the administrative level in accordance with the requirement that the plaintiffs exhaust their administrative remedies. Thus, it would not only be unnecessary, but improper for this Court to determine whether the placement at Madison School constitutes a "change in placement" and whether that placement precludes the plaintiffs from receiving a "free appropriate education." 20 U.S.C. § 1412. However, the question is not settled one way or the other as to whether assignment to a new school, under these circumstances, constitutes a change in placement. As such, it is clear that the plaintiffs have *alleged* a "substantive violation of the Act." *Paul B.*, 88 F.3d at 1473 (emphasis added). Having alleged a violation of the IDEA regarding a change in placement, the Court finds that section 1415(e)(3)(A) applies to the plaintiffs.

The Court's finding is supported by the comments of the Supreme Court in *Honig*. In *Honig*, the Court affirmed the lower court's injunction directing the school district to permit the student to remain in school. *Honig*, 484 U.S. at 329, 108 S.Ct. at 607, 98 L.Ed.2d at 710. The Court reiterated the "clear directive" of the stay put provision, stating "[t]he language of § 1415(e)(3) is unequivocal. It states plainly that during the pendency of any proceedings initiated under the Act ... 'the child *shall* remain in the then current educational placement.'" *Id.* at 323, 108 S.Ct. at 604, 98 L.Ed.2d at 706–707. Affirming the District Court's finding in favor of the student with regard to enforcing the stay put provision, the Supreme Court noted that it could not permit "school officials [to] escape the presumptive effect of the stay put provision simply by violating it and forcing parents to petition for relief." *Id.* at 328 n. 10, 108 S.Ct. at 607, 98 L.Ed.2d at 710.

A case from the Northern District of Illinois lends further support to this interpretation of the stay put provision. In *Carl v. Mundelein High School District 120 Board of Educ.*, No. 93 CV 5304, 1993 WL 787899 (N.D.Ill. September 3, 1993), the plaintiff sought preliminary and permanent injunctions directing the school board to comply with the stay put provision and permit the plaintiff to remain in her current educational placement. *Id.* at 2. That court noted that its opinion as to the merits of the substantive claim under the IDEA was immaterial to the application of the stay put provision. *Id.* It found that the plaintiff was not required to exhaust her administrative remedies in order for section 1415(e)(3)(A) to apply because she had initiated administrative proceedings pursuant to the IDEA, which the court found to be sufficient to trigger the stay put provision. *Id.*

Indeed, the protection of the stay put rule would be of little benefit if the plaintiffs are forced to proceed with administrative remedies in order to apply it. As noted by the plaintiffs, the rule is intended to protect the student during the challenge to the change in placement.

The application of an injunction requires the Court to weigh the parties' interests. The *Carl* court recognized that the plaintiff's right to remain in her current educational placement would be lost such that she could not be compensated for it. *Id.* In this action, the plaintiffs have remained at Benton Hall only because their parents have financed it. The parents contend that some of them are not financially able to continue paying for their children to go to the private school. Plaintiffs' response (Docket Entry No. 48) at 9. This contention aside, however, the parents of the plaintiffs cannot be expected to pay for that which is guaranteed under the stay put provision of the IDEA.

It is established that section 1415(e)(3)(A) "guarantees consistency in a child's learning environment until a challenge to an existing placement or a new placement has successfully established whether a different alternative placement is necessary." *Paul B.*, 88 F.3d at 1472. Given the statute's emphasis on protecting the child, the Court is hard pressed to accept the view that section 1415(e)(3)(A) is not applicable until the plaintiffs establish, at the administrative level, that a change in placement has occurred.

Based upon its finding that the circumstances of the plaintiffs triggered the stay put provision upon the plaintiffs' demands for

due process hearings, the Court concludes that the defendant was required to engage the stay put at that time. Given these findings, it is clear that the plaintiffs did not have to exhaust their administrative remedies in order to show that the stay put provision applied to them. The Court notes that the plaintiffs are still required to exhaust their administrative remedies with regard to any other claims of violations under the IDEA, including their substantive claim of change of placement.

■ Additionally, the Court finds that even if the plaintiffs were required to exhaust their administrative remedies in order to trigger the stay put provision, exhaustion would be excused based on futility. As discussed previously, the plaintiffs are not before this Court demanding permanent placement at Benton Hall. They are requesting placement at Benton Hall *during* the pendency of the proceedings. Were the plaintiffs required to exhaust their administrative remedies, their rights under the stay put provision would be all but lost. As such, the Court finds that it would be futile for the plaintiffs to exhaust their administrative remedies as to the application of section 1415(e)(3)(A).

### 3. Current Educational Placement

■ Having determined that section 1415(e)(3)(A) applies to the plaintiffs, it is necessary to establish their current educational placement under that section. As noted by the parties, the IDEA does not define "current educational placement." [9] *See Thomas v. Cincinnati Bd. of Educ.,* 918 F.2d 618, 625 (6th Cir.1990). In *Thomas,* the Sixth Circuit stated that the "then current educational placement" refers to the "operative placement actually functioning at the time the dispute first arises." *Id.* at 626. The Court further stated that "[i]f an IEP has been implemented, then that program's placement will be the one subject to the stayput provisions." *Id.*

The plaintiffs' parents demanded due process hearings based on their complaints about the new IEP's around August 1, 1995.

Clearly, the plaintiffs were in between school years and were expecting a 1996–1997 IEP to supersede the one used for the previous school year. Although the 1995–1996 school year had ended, the IEP for that year was the one which had been most recently implemented. Certainly, it was not the intent of Congress for the "then current educational placement" to be the one which the school district proposed for the following school year. This result would completely circumvent the underlying purpose of section 1415(e)(3)(A) to preserve the status quo. As such, the Court finds that the "current educational placement" of the plaintiffs is Benton Hall.

### IV.

■ In their motion for summary judgment, the plaintiffs seek an injunction ordering the defendant to permit them to remain at their current educational placement, Benton Hall, under section 1415(e)(3)(A). Having determined that the plaintiffs are entitled to remain at Benton Hall during the pending proceedings under the IDEA, the Court must consider whether the plaintiffs have established irreparable harm and that they have no adequate remedy at law. *See Rondeau v. Mosinee Paper Corp.,* 422 U.S. 49, 57, 95 S.Ct. 2069, 2075, 45 L.Ed.2d 12, 20 (1975) (citations omitted). As noted previously, the parents of the plaintiffs contend that they are not able to continue paying for the plaintiffs to attend Benton Hall during the pending proceedings. If they are forced to change schools based on inability to pay, they will certainly experience irreparable harm, as that loss in education cannot be regained at a later date. *See Carl,* 1993 WL 787899 at 3. Furthermore, the Court fails to see an adequate remedy at law for the loss of their rights under the stay put provision. *See id.* Upon balancing the interests of the parties, the potential harm to the plaintiffs outweighs the possibility of an erroneous expenditure of funds by the defendant. Accordingly, the Court concludes that there exists no genuine issue of material fact as to the plaintiffs' claim for permanent injunction

---

9. Indeed, while the Court will not pass on the merits of this issue, the meaning of "placement"

under the IDEA is the substance of the plaintiffs' demand for due process hearings.

ordering the defendant to permit the plaintiffs to remain at Benton Hall at the cost of the defendant pursuant to section 1415(e)(3)(A), and the plaintiffs are entitled to a permanent injunction as a matter of law.

■ Additionally, the plaintiffs seek reimbursement for the cost of tuition and transportation to Benton Hall from the beginning of the 1996–1997 school year until the date of the entry of the permanent injunction. Amended complaint (Docket Entry No. 47) at 8. It is noteworthy that the plaintiffs are not seeking damages, but requesting that the defendant repay them for the cost of complying with section 1415(e)(3)(A) from the time that the provision became applicable. *See School Comm. v. Department of Educ.*, 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985). Furthermore, reimbursement is not dependent on whether the IEP is proper or not. Regardless of the merits of the plaintiffs' claims that the defendant is violating the substantive provisions of the IDEA by placing the plaintiffs at Madison School, the defendant has violated section 1415(e)(3)(A) since the beginning of this school year. A school is required to bear the cost of keeping a student in the "current educational placement" under section 1415(e)(3)(A). *See Id.* at 369–70, 105 S.Ct. at 2003, 85 L.Ed.2d at 395; *see also Drinker by Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 867 (3d Cir.1996). As such, the Court finds that the plaintiffs are entitled to judgment as a matter of law as to their claim that the defendant must reimburse them for the cost of attending and transportation to Benton Hall from the beginning of the 1996–1997 school year to the entry of the permanent injunction.

Finally, the plaintiffs seek attorneys fees under the IDEA. The Court will entertain that request upon an application for those fees under Rule 13(e), Local Rules of Court.

Based on the foregoing conclusions, the Court finds that the plaintiffs are entitled to judgment as a matter of law and their motion

will be granted. The defendant's motion for summary judgment will be denied.

An appropriate order shall be entered.

### ORDER

In accordance with the memorandum contemporaneously entered, the defendant's motion (filed November 27, 1996; Docket Entry No. 41) for summary judgment is denied and the plaintiffs' motion[1] (filed December 27, 1996; Docket Entry No. 38) for summary judgment is granted. The renewed motion (*see* amended complaint filed December 12, 1996; Docket Entry No. 96) for injunctive relief is granted.

Accordingly, the defendant is directed, at its cost, to permit the plaintiffs to remain at their current educational placement, Benton Hall, under 20 U.S.C. § 1415(e)(3)(A).

The Court further finds that the plaintiffs are entitled to judgment as a matter of law as to their claim that the defendant reimburse them for the cost of attending and transportation to Benton Hall from the beginning of the 1996–1997 school year to the entry of this order.

Within twenty (20) days of the date of entry of this order, the plaintiffs shall submit an itemized statement to the defendant setting forth the amounts due and owing, and the plaintiffs shall have and recover from the defendant said funds within ten (10) days of defendant's receipt of said statement. Should there be a dispute between the parties concerning the final amounts due and owing, the attorneys are directed to meet, face to face, in an effort to resolve the dispute. If the dispute cannot be resolved, a jointly signed dispute statement shall be filed with the Court setting forth precisely the remaining issues in dispute and the reasons why those issues remain unresolved.

The plaintiffs may make application for attorneys' fees in accordance with Rule 13(e), Local Rules of Court.

---

1. The plaintiffs also submitted directly to the Court a letter dated February 5, 1997. The defendant filed a motion (*See* Docket Entry Nos. 58 and 59) objecting to consideration of this letter by the Court in its determination of the summary judgment motions. The motion is well taken and the letter will not be taken into consideration. The letter has not been made part of the record, but rather will be deemed a supplement to the plaintiffs' proposed findings of fact and conclusions of law.

1224

The defendant's motion (filed November 27, 1996; Docket Entry No. 45) for oral argument is deemed moot.

The motion (filed January 10, 1997; Docket Entry No. 54) of plaintiffs Joe Kenneth Davis, Bradley H. Harris, Christopher Lewis, Daniel Pewitt and Mark Bryan Stowers to dismiss and motion (filed January 16, 1997; Docket Entry No. 55) of plaintiff Nicholas D. MacDonald to dismiss are granted and the claims of these plaintiffs are dismissed with prejudice from this action.

Entry of this order shall constitute the judgment in this action.

It is so ORDERED.